In re Kenneth L. MERITT, and Eunice Ann Meritt, Debtors.

and

Alvin G. Meritt, and Dolores J. Meritt, Debtors.

Jack E. BROWN, Trustee, Plaintiff,

v.

The CALLAWAY BANK, Defendant.

Bankruptcy Nos. 80–01351–C, 80–01452–C. Adv. No. 80–0425–C.

United States Bankruptcy Court, W. D. Missouri, C. D.

Dec. 29, 1980.

D. James Mariea, Fulton, Mo., for defendant.

Fred Dannov, Columbia, Mo., for plaintiff.

Jack E. Brown, Columbia, Mo., Trustee.

## MEMORANDUM OPINION AND ORDER

FRANK P. BARKER, Jr., Bankruptcy Judge.

This is an action to set aside a preferential transfer under Section 547 of the Bankruptcy Code. The matter was tried before me in Jefferson City, Missouri on November 6, 1980, all parties being represented in person and by counsel.

At the outset of trial, the Trustee dismissed paragraph 18 of his complaint, stating that he had no interest or claim to the $7,000 allegedly paid the bank by the debtors.

The relevant facts are as follows: The debtors in this case decided to purchase thirty (30) stainless steel farrowing crates for their hog farm operation. On June 4, 1979 the defendant, The Callaway Bank, loaned the debtors $10,000 (see Defendant's Ex. # 1–Promissory Note) and took a security agreement describing these farrowing crates from the debtors. Eunice Meritt testified that shortly thereafter the debtors purchased the crates with this money.

James Curtis Yancey, Vice President of The Callaway Bank, testified that the note was to be paid from the sale of wheat in 60 days, but that this did not occur. The note was subsequently extended for numerous 60-day periods.

A U. C. C. financing statement was signed June 4, 1979 but was not filed with the Callaway County Recorder of Deeds' office until March 6, 1980. No evidence was presented as to filing with the Secretary of State's office. The financing statement's description of collateral was "machinery and equipment". Bankruptcy was filed by the debtors on May 5, 1980 and thus, the financing statement was filed within 90 days of the filing of bankruptcy.

Sale of these crates was first attempted at a close-out sale held by the debtors. The highest bid received however, was $195.00 and the crates were left in the debtor's barn unsold. Eunice Meritt testified that the reason the crates were not sold was that the bank had set a lowest bid limit of $200.00 each on the crates, however, she was not present when the bank set the limit. Mr. Yancey testified that an upset price was discussed and the Meritts' wanted $250.00 each crate. The bank later sold 15 of the crates for $200.00 each and the remaining 15 for $130.00 each, with sales expenses of $195.00 for total proceeds of $4,755.00.

The Trustee argues that based on the facts, the filing of the financing statement by the bank within 90 days prior to bankruptcy, changed its creditor status from a secured to a perfected secured party, and as such is a preferential transfer under Bankruptcy Code § 547. Trustee also contends, for the first time in his Trial Suggestions, that a financing statement describing the collateral (farrowing crates) as "machinery and equipment" does not meet the requirements of the Uniform Commercial Code.

Except for the excepted transactions of § 547(c) of the Bankruptcy Code, the Trustee under § 547 ("preferences") can avoid and recover for the benefit of the estate *any* transfer of the debtor's property:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;

(5) that enables such creditor to receive more than such creditor would receive if

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor receive payment of such debt to the extent provided by the provisions of this title.

Further, the Code arms the Trustee with the presumption that the debtor was insolvent during the 90 days immediately preceding the filing of the petition (§ 547(f)), thus simplifying the trustee's burden.

The keystone of a preference, and especially in this case, is a transfer of the debtor's property.

█ Section 101(40) of the Bankruptcy Code defines "transfer" as

"every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest."

We have no doubt that the perfection of a security interest constitutes a transfer under this definition.

Thus any determination as to when the various elements of a preference in § 547(b) exist must generally be directed to some given point in time. This crucial time is when the transfer was "made".

"For purposes of section 547(b), however, a transfer is not necessarily deemed to have been made at the time when the debtor and his transferee do what may effect a completed and irrevocable transfer as between themselves. Section 547(e) provides that it shall be deemed to have been made only when perfected as against other parties—in the case of personal property or fixtures, as against subsequent creditor's liens obtainable by judicial proceedings by creditors on a simple contract..." 4 Collier on Bankruptcy (15th Edition) ¶ 547.44 (1978)

Certain types of transfers, of course, are perfected against third parties as soon as they are made, without the need for any further step, such as recording. Our situation is not one of these, under § 400.9–302 R.S.Mo. (1965).

Further, subsection (e)(2) of 547 determines *when* the transfer is made:

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; and

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

The underlying purpose and effect of 547(e)(2) is to make all elements of a voidable preference (except the "greater percentage" factor) determinable as of the date when the transfer was so perfected.

Thus, under § 547(e)(2)(A) and (B) the transferee is given a ten-day grace (change from 21 day grace period of former Act section 60(a)(7)) period from the actual date of transfer within which to perfect the transfer, and if this is not done the transfer is made at the time the transfer is perfected.

█ Based on the above facts and statutory language, we find that the transfer was "made" on March 6, 1980, and that a determination of whether all the voidable preference elements are present must be done using this date.

Several recent cases appear that agree with this analysis. In the case of *In re Poteet*, 5 B.R. 631 (Bkrtcy.E.D.Tenn.1980) the plaintiff-trustee filed a complaint alleging that the defendant-bank perfected a security interest in the debtor's property within 90 days before bankruptcy and thereby received a "preferential transfer" under § 547.

The controversy there involved a lien which was to be noted on a certificate of title to a trailer which debtor bought with the bank's loan. Normally the lien would be perfected, at the latest, when the application for a certificate of title with the lien noted was received by the Motor Vehicle Division (MVD). But MVD received two (2) applications for title in the debtor's name. The first was received outside the preference period and rejected, the second was received within 90 days of bankruptcy and approved.

The court held that the transfer occurred when the bank perfected its security interest and this was within the preference period of 90 days before the debtor's filing and thus voidable by the trustee.

*In re Butson's, Inc.,* 2 B.R. 145 (Bkrtcy.D. Oregon 1980) the defendant sold his business assets to Butson's and took a security agreement but failed to file a financing statement in 1976. On September 5, 1978 he finally filed a security agreement as a financing statement. On September 22, 1978 Butson's filed bankruptcy. This was found to be a voidable preference under § 60 of the Bankruptcy Act.

See also *In re Butler,* 3 B.R. 182 (Bkrtcy. E.D.Tenn.1980) (where the creditor's perfection of its security interest just 18 days before the filing of the bankruptcy petition constituted a preferential transfer); and *In re Kelley,* 3 B.R. 651 (Bkrtcy.E.D.Tenn. 1980) (loan on van made June 12, 1979; title issued August 15, 1979 and bankruptcy filed October 10, 1979 constituted a preferential transfer).

■ The law places upon the trustee the unmistakable burden of proving by a fair preponderance of all the evidence the five essential elements of § 547(b). *Barry v. Crancer,* 192 F.2d 939 (8th Cir. 1951) 4 *Collier on Bankruptcy,* (15th Edition) ¶ 547.55 (1978).

From the proof and the entire record the Court finds all five elements of a preference. (1) This transfer was certainly a benefit to the bank as their status changed from a secured to a perfected secured party.

(2) This transfer was on account of an antecedent debt. The only consideration received by the debtor was at the time of his actual execution of the transfer—no other consideration was received between that time and the time the transfer was "made". (3) § 547(f) presumes insolvency within the 90 days preceding the filing of the petition, and the transferee has failed to rebut this presumption. (4) The date the transfer was "made" was March 6, 1980 and well within 90 days before the petition in bankruptcy was filed May 5, 1980. (5) Finally, a change in the bank's status from a secured to a perfected secured party would enable the creditor to receive more than he would if he were forced to share the value of the farrowing crates with other unperfected secured creditors. Even though the trustee, pursuant to the Code can otherwise avoid a claim as preferential, the Code incorporates a number of exceptions in § 547(c) to this avoidance power. Thus, the bank would be protected to the extent it qualifies under any one of the exceptions. The bank argues that exception § 547(c)(1) is appropriate in this case. § 547(c)(1) states:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

An article written by a member of the House Judiciary Committee staff that drafted the Code, *An Introduction to the Trustee's Avoiding Powers,* by Richard Levin, 53 Am.Bank.L.J. 173, 186 (1979), discusses the intent of this exception:

The first exception is a simple one, excepting a transfer that is really not on account of an antecedent (debt). Literally, the transfer must have been intended by the debtor and the creditor to have been a contemporaneous exchange for new value and "in fact a substantially

contemporaneous exchange". No doubt a purchase by the debtor of goods or services with a check, if deemed to be on credit by state law, would be insulated by this exception. Though strictly speaking the transaction may be a credit transaction because the seller does not receive payment until the check is cleared through the debtor's bank, it is generally considered and intended to be a contemporaneous transaction, and assuming the check is promptly deposited and cleared, is in fact substantially contemporaneous.

See also H.R.Rep.No.595, 95th Congress, 1st Sess. 373, U.S.Code Cong. & Admin.News 1978, p. 5787.

This Court not only finds that the Congress did not intend that this exception apply to our factual situation, but that because of the substantial time between the transfer (when the security interest was perfected) and the making of the debt (over eight (8) months), this Court finds that the exchange was not in fact substantially contemporaneous.

Defendant bank cites *In re King-Porter Company*, 446 F.2d 722 (5th Cir. 1971) as authority for its contention that the perfection was contemporaneous with the loan although more than a month had elapsed. I do not find *King-Porter* at all factually analogous to the case at bar. That case involved a "floating lien" on after acquired property.

This Court thus determines this transaction to be a voidable preference under § 547 and that the trustee is entitled to the proceeds of the sale of the crates in the amount of $4,755.00 and that the expenses of sale by the bank of $195.00 were reasonable. It is

ORDERED that defendant turn over to the trustee the sum of $4,560.00.