In re Laverne James MURRAY, Eva Jean Murray, Debtors.

Robert H. WALDSCHMIDT, Trustee, Plaintiff,

v.

FORD MOTOR CREDIT COMPANY, Laverne James Murray, and Eva Jean Murray, Defendants.

Bankruptcy No. 382–00586.
Adv. No. 382–0298.

United States Bankruptcy Court, M.D. Tennessee, Nashville Division.

Feb. 8, 1983.

Robert H. Waldschmidt, Cosner, Waldsch-midt & Crocker, Nashville, Tenn., Trustee.

Kevin J. Jones, Loewenstein, Ziegler & Buffaloe, Nashville, Tenn., for Ford Motor Credit Co.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

This matter is before the court on the trustee's complaint to avoid a preferential transfer. The trustee alleges that the debtors' transfer of a security interest in an automobile is an avoidable preference. Ford Motor Credit Company denies that the transfer was preferential maintaining that it was not made on account of an antecedent debt, and that the transfer was a "contemporaneous exchange" excepted from the trustee's avoiding powers. After review of the entire record and the applicable authority, the court concludes that the debtors' transaction with Ford Motor Credit Compa-ny created an avoidable preference. Furthermore, the "contemporaneous exchange" exception is not available to expand the 10-day perfection period specifically provided for enabling loans and does not protect the transfer from avoidance. Accordingly, the proceeds from the sale of the automobile must be turned over to the trustee for administration.[1]

The following constitute findings of fact and conclusions of law required by Rule 752 of the Federal Rules of Bankruptcy Procedure.

The facts are not disputed. The debtors, Laverne James Murray and Eva Jean Murray, purchased a 1981 Lincoln Mark VI automobile from Preston Lincoln-Mercury on March 7, 1981. A certificate of title was issued by the Tennessee Department of Motor Vehicles noting Ford Motor Credit Company ("FMCC") as first lienholder and Laverne Murray as owner.

The Murrays experienced numerous problems with the automobile. After unsuccessfully attempting to remedy the defects, the dealership offered to substitute a 1981 Cadillac Fleetwood Brougham. The Murrays consented and FMCC approved the substitution under the terms of the original loan arrangement. On January 22, 1982, the Murrays executed a new security agreement pledging the Cadillac as collateral. The car was delivered to the Murrays at the latest on January 26, 1982.[2] On January 25, 1982, the dealership employee responsible for obtaining lien notations on certificates of title resigned. A replacement was hired on February 1, 1982 and began working February 8, 1982. The new clerk applied for a certificate of title noting FMCC as lienholder on February 9, 1982, 18 days after the grant of the security interest and at least 14 days after delivery of the car.

On February 26, 1982, the debtors filed a petition under Chapter 7 of the Bankruptcy

---

1. Pursuant to an agreed order entered June 17, 1982, the automobile has been sold and the proceeds held in escrow pending resolution of this matter.

2. The affidavits submitted to the court indicate that some warranty work was performed on the Cadillac after execution of the new security agreement and that the car was finally delivered to the Murrays after the repairs on January 25 or January 26.

Code. The debtors listed FMCC as a secured creditor holding a security interest in the automobile. FMCC filed a proof of claim evidencing secured indebtedness of $21,894.34. Mr. Murray surrendered the automobile to FMCC.

The trustee subsequently initiated an adversary proceeding to set aside FMCC's security interest as a preferential transfer.

■ The Bankruptcy Code prescribes six elements which must be proven before a transfer is preferential: (1) a transfer of property of the debtor; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt; (4) made while the debtor was insolvent; (5) made within 90 days before the date of the filing of a petition; (6) that enables the creditor to receive more than it would have received if the transfer had not been made and the case were a liquidation case under Chapter 7. 11 U.S.C.A. § 547(b) (West 1979). The burden of proof is on the trustee to demonstrate each and every requirement, and if the proof is lacking on any element, the transfer may not be avoided. *Eggleston v. Third National Bank,* 19 B.R. 280, 282 (Bkrtcy.M.D.Tenn.1982). *See also Steel Structures, Inc. v. Star Manufacturing Co.,* 466 F.2d 207, 216 (6th Cir.1972); 2 Norton Bankr.L. & Prac. § 32.12 at 37 (1981).

The existence of five of the six preference elements is not at issue. FMCC concedes that a transfer of the debtors' property occurred, that the transfer benefited FMCC and allowed FMCC to receive more than it would have under the provisions of Chapter 7 if the transfer had not been made and that the transfer occurred within 90 days before bankruptcy during which time the debtor is presumed to be insolvent.[3]

FMCC disputes the trustee's contention that the transfer was made on account of an antecedent debt. FMCC acknowledges that the debt in question was incurred when the Murrays executed the security agreement on January 22, 1982. The issue is when did the "transfer" occur for purposes of the preference calculation.

■ Under the Bankruptcy Code, the date of transfer is determined with reference to the date a security interest is "perfected." 11 U.S.C.A. § 547(e)(2).[4] The transfer of a security interest in personal property (here, an automobile) is perfected when a creditor cannot acquire a judicial lien that is superior to the lien of the transferee. 11 U.S.C.A. § 547(e)(1)(B) (West 1979). Under Tennessee law, a creditor cannot obtain a superior judicial lien on a motor vehicle once the transferee has satisfied the requirements for recording the lien on the certificate of title as set out in Tenn.Code Ann. § 55–3–101, *et seq.* (1980 repl. vol.). FMCC fulfilled these requisites when the Department of Motor Vehicles recorded the lien on debtors' automobile on February 9, 1982. Thus, for purposes of the preference statute, the "transfer" of the debtors' property to FMCC took place on February 9, 1982.

■ FMCC argues that the "transfer" took place before February 9 because no judicial lien creditor could have acquired a superior lien between January 22 (or January 26) and February 9 since FMCC's security interest was continuously effective and relates back to the date the security agree-

---

**3.** FMCC does not contest the presumption of insolvency.

**4.** Section 547(e)(2) provides as follows:
(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—
(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;
(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—
(i) the commencement of the case; and
(ii) 10 days after such transfer takes effect between the transferor and the transferee.
The reference to § 547(e)(3) in the text of § 547(e)(2) adds the requirement that the debtor must acquire rights in the property before a transfer can take place for preference purposes. In the case at hand, this occurred on or before January 26 and is, thus, not outcome determinative.

ment was signed. FMCC relies on Tenn. Code Ann. § 47–9–301(2) which provides:

> If the secured party files with respect to a purchase money security interest before or within twenty (20) days after the collateral comes into possession of the debtor, he takes priority over the rights of a transferee in bulk or of a lien creditor which arise between the time the security interest attaches and the time of filing.

FMCC is correct that it may have priority over any other party asserting a lien under state law. However, timely perfection under state law does not necessarily provide protection from the creation of a possible preference under the Bankruptcy Code.

Although Tennessee law is appropriate for determining the *date of perfection,* the *date of transfer* is governed by the provisions of § 547. "The preference statute has its own rules... Under the preference statute perfection relates back only as allowed by it. The exception in § 546(b) for state laws allowing relation back does not apply to the preference statute." *Ford Motor Credit Co. v. Ken Gardner Ford Sales, Inc.,* 10 B.R. 632, 643 (Bkrtcy.E.D.Tenn. 1981).[5] Section 547 provides that if the security interest is perfected within 10 days after the transaction took effect between the parties, then the date of the transaction is considered to be the date of transfer for determining whether a preference has occurred. 11 U.S.C.A. § 547(e)(2)(A) (West 1979) (*See* note 4 *supra.*) If a security interest is perfected *after* 10 days, however, the transfer is considered to be made on the date of perfection. For purposes of § 547, February 9, 1982, the date FMCC's security interest was perfected, is the date of transfer. The transfer, coming 18 days after the creation of the debt and at least 14 days after delivery of the car, is outside the relation back period provided under the Bankruptcy Code and is, therefore, on account of an antecedent debt.

■ Finding all the operative elements of a preference present in the instant case, FMCC's security interest is avoidable unless the transaction comes within one of the savings provisions delineated in § 547(c). The trustee argues that the only exception available to FMCC is 11 U.S.C.A. § 547(c)(3) (West 1979). Section 547(c)(3) provides:

> (c) The trustee may not avoid under this section a transfer—
>
> (3) of a security interest in property acquired by the debtor—
>
> > (A) to the extent such security interest secures new value that was—
> >
> > (i) given at or after the signing of a security agreement that contains a description of such property as collateral;
> >
> > (ii) given by or on behalf of the secured party under such agreement;
> >
> > (iii) given to enable the debtor to acquire such property; and
> >
> > (iv) in fact used by the debtor to acquire such property; and
> >
> > (B) that is perfected before 10 days after such security interest attaches.

This provision has come to be referred to as the "enabling loan" exception. There is little question that the transfer involved in the present case is an enabling loan. The security interest was taken to secure new value at the time the agreement was signed, was taken to enable the debtor to obtain the automobile, and actually resulted in acquisition of the automobile.[6] However, because FMCC did not perfect its security interest within the prescribed 10 days, § 547(c)(3) does not protect the transfer from avoidance.

FMCC contends, however, that its security interest is protected by 11 U.S.C.A. § 547(c)(1) which provides:

> (c) The trustee may not avoid under this section a transfer—
>
> (1) to the extent that such transfer was—

---

5. Section 546(b) provides limitations on the trustee's avoiding powers under certain sections, not including the preference provisions herein applicable.

6. No party contends that the substitution of the Cadillac for the Lincoln in any way upsets the enabling character of the loan.

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

This section has come to be referred to as the "contemporaneous exchange" exception. The courts have been struggling with the relationship between the contemporaneous exchange exception to the preference power and the enabling loan exception discussed above. Specifically, to come within the enabling loan exception, the creditor must perfect its security interest within 10 days after attachment. No such time limit is specified for the contemporaneous exchange exception. To support the application of § 547(c)(1) to enabling loan cases, FMCC cites several decisions originating with Judge Kelley of the Bankruptcy Court for the Eastern District of Tennessee. *See Jahn v. First Tennessee Bank (In re Burnette),* 14 B.R. 795 (Bkrtcy.E.D.Tenn.1981); *Ray v. Security Mutual Finance Corp. (In re Arnett),* 13 B.R. 267 (Bkrtcy.E.D.Tenn.1981) *aff'd,* 17 B.R. 912 (E.D.Tenn.1982); *See also General Motors Acceptance Corp. v. Martella,* 22 B.R. 649 (Bkrtcy.D.Colo.1982) (adopting *Arnett* in applying § 547(c)(1) to except from avoidance an enabling loan perfected after 10 days). Judge Wilson explained the alleged interrelationship between § 547(c)(1) and § 547(c)(3) in affirming the bankruptcy court's holding in *In re Arnett:*

... [A]ny security interest perfected in the ten day grace period will be treated as being "in fact substantially contemporaneous," while it will be a question of fact as to whether any transaction extending beyond these limits is "in fact substantially contemporaneous" ... When delay beyond the ten day grace period is satisfactorily explained ... and no risk of fraud or misrepresentation is occasioned by the delay, the statute should not prevent the courts from being allowed to determine that the transaction was substantially contemporaneous.

17 B.R. at 914. This application of the contemporaneous exchange section to enabling loan situations in effect creates a "good faith exception" to the 10-day perfection period provided by § 547(c)(3). The adherents to this view seek a factual explanation as to why perfection did not occur within 10 days. If a satisfactory excuse is offered, the specific limitation contained in § 547(c)(3) is overcome.

This court respectfully disagrees with the expansive application of the contemporaneous exchange exception outlined above. The better view and the majority view is that § 547(c)(3) is the exclusive exception available to protect enabling loans from avoidance.[7] *See Gower v. Ford Motor Credit Co. (In re Davis),* 22 B.R. 644 (Bkrtcy.M. D.Ga.1982); *Valley Bank v. Vance,* 22 B.R. 26 (Bkrtcy.D.Idaho 1982); *Knauer v. Enlow,* 20 B.R. 480 (Bkrtcy.S.D.Ind.1982); *Ex-*

---

**7.** The court is aware that the legislative history indicates that a transferee may qualify under more than one exception. The House Report noted that:

Subsection (c) contains exceptions to the trustee's avoiding power. If a creditor can qualify under any one of the exceptions, then he is protected to that extent. If he can qualify under several, he is protected by each to the extent he can qualify under each.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6329. The legislative history does not reveal which sections might provide multiple protection or why a transferee would desire to qualify under more than one section because satisfaction of any section excepts the entire transfer from avoidance. Assuming some purpose for multiple protection, however,

the legislative history cannot be interpreted, as FMCC argues, to suggest that all exceptions in § 547(c) are interchangeable and overlap. Each section has distinct prerequisites and to the extent one of those elements is absent, the section is inapplicable. Similarly, those sections that are inconsistent with each other will not be applied to one another. It is a well-established principle of statutory construction that where a statute provides for a certain remedy, all inconsistent remedies should be discounted. *National Railroad Passenger Corp. v. National Assoc. of Railroad Passengers,* 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). *Botany Worsted Wools v. United States,* 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379 (1929). This is an application of the maxim of statutory construction *expressio unius est exclusio alterius.*

change *Bank v. Christian,* 8 B.R. 816 (Bkrtcy.M.D.Fla.1981); *Brown v. Callaway Bank (In re Merritt),* 7 B.R. 876 (Bkrtcy.W. D.Mo.1980). A number of leading commentators have concurred that the contemporaneous exchange exception is not available to excuse the untimely perfection of an enabling loan.

If the perfection was delayed more than 10 days, the question is whether Code § 547(c)(1) provides protection for delay beyond the 10-day grace period. The better view is that the general terms of Code § 547(c)(1) yield to the specific protections embodied in the 10-day grace period.

2 Norton Bankr.L. & Prac. § 32–13 at 41– 42 (1981). *See also* White & Summers, Uniform Commercial Code § 24–4 at 1006 (2d ed. 1980); 4 L. King, Collier on Bankruptcy ¶ 547.46 at 136.4 n. 13(c) (15th ed. 1982).

 The expansive interpretation of the contemporaneous exchange exception argued by FMCC departs significantly from the legislative intent underlying the creation of § 547(c)(1).[8] Although, the legislative history is sparse, the discussion of problems involving bank checking account transactions is illustrative of the underlying purpose of the provision.

The first exception is for a transfer that was intended by all parties to be a contemporaneous exchange for new value and was in fact substantially contemporaneous. Normally a check is a credit

transaction. However, for the purposes of the paragraph, a transfer involving a check is considered to be "intended to be contemporaneous," and if the check is presented for payment in the normal course of affairs, which the Uniform Commercial Code specifies as 30 days, U.C.C. § 3–503(2)(a), that will amount to a transfer that is "in fact substantially contemporaneous."

H.R.Rep. No. 595, 95th Cong., 1st Sess. 373, *reprinted in* 1978 U.S.Code Cong. & Ad. News 6329. Richard Levin, a member of the House Judiciary Committee staff during the drafting of the Bankruptcy Reform Act of 1978, further explains that:

... The first exception [the contemporaneous exchange exception] is a simple one, excepting a transfer that is really not on account of an antecedent. No doubt a purchase by the debtor of goods or services with a check, if deemed to be on credit by state law, would be insulated by this exception. Though strictly speaking the transaction may be a credit transaction because the seller does not receive payment until the check is cleared through the debtor's bank, it is generally considered and intended to be a contemporaneous transaction, and assuming the check is promptly deposited and cleared, is in fact substantially contemporaneous.

"An Introduction to the Trustee's Avoiding Powers," 53 Am.Bankr.L.J. 173, 186 (Spring 1979). Congress was apparently concerned

---

**8.** A principle objective of a court interpreting statutory provisions is to ascertain and effectuate Congressional intent. *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975); *Sinclair Refining Co. v. Atkinson,* 370 U.S. 195, 215, 82 S.Ct. 1328, 1339, 8 L.Ed.2d 440 (1962); *City of Tullahoma v. Coffee County,* 204 F.Supp. 794, 798 (E.D. Tenn.1962). While the literal meaning of a particular clause is persuasive, a court should look beyond the literal meaning of the particular clause and analyze it in context, keeping in mind the objectives of the whole section and construing its application to effectuate the intent of Congress. *Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974); *Perry v. Commerce Loan Co.,* 383 U.S. 392, 400, 86 S.Ct. 852, 857, 15 L.Ed.2d 827 (1966); *Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1961).

The literal application of particular language sometimes clashes with the legislative intent and it has long been a familiar rule that although an interpretation of a provision may technically be within the letter of the statute, it is not a proper interpretation because not within the spirit of the statute, nor intended by its drafters. *Church of the Holy Trinity v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892).

Judge Kelley conceded in applying the contemporaneous exchange exception to an enabling loan perfected after 10 days of transfer that "this exception was not meant to apply to situations like this. *What Congress had in mind were transactions that parties do not consider to be on credit though legally they are."* *In re Burnette,* 14 B.R. at 802. (emphasis added).

that cash payments would be converted to credit transactions by a mere delay in receipt or deposit. Essentially cash transactions were not intended to be avoidable preferences. Congress, therefore, created two separate exceptions, distinguishing between credit transactions which were governed by § 547(c)(3) and noncredit transactions governed by § 547(c)(1).[9] As the court stated in *Enlow:*

> The explicit reference by Congress in § 547(c)(3) to enabling loans lends further support to the conclusion that § 547(c)(1) is not applicable to the instant transaction. Through its enactment of § 547(c)(3) Congress intended to make that section—not § 547(c)(1)—applicable to an enabling loan situation.

20 B.R. at 483. The transfer of the security interest in the instant case is clearly an extension of credit and not a cash transaction, and is, therefore, not within the intended ambit of § 547(c)(1).

■ The policies underlying the enactment of § 547(c)(3) further support the rejection of FMCC's theory of this case. The fixing of the 10-day grace periods in §§ 547(c)(3) and (e)(2) was an effort to establish a national uniform perfection period for enabling loans in bankruptcy cases. Congress shortened the perfection period from 21 days under the Bankruptcy Act to 10 days under the new Bankruptcy Code. *See In re Burnette,* 14 B.R. at 797–801.

Judge Kelley noted in *Burnette* that "the ten day grace periods in § 547(e)(2) and (c)(3) were meant to operate in the same way. The idea was that the preference statute should establish a *uniform* grace period." 14 B.R. at 798–799 (emphasis added). Furthermore,

> [i]t is evident that Congress did not intend for state grace periods to be relevant under the preference statute. There was to be a uniform rule throughout the nation. In any jurisdiction, a transferee' was to have only ten days to perfect a transfer and thereby avoid the antecedent debt problem.

*Id.* at 801. This court should not unnecessarily interpret the interaction of state law and the Bankruptcy Code in a manner which defeats the uniformity Congress intended. Although the state legislature has discretion to establish grace periods relevant for determining priorities in ordinary commercial transactions, such grace periods are not controlling in the bankruptcy context for determining whether a preference is avoidable.

■ Finally, the application of the contemporaneous exchange exception argued by FMCC essentially renders the provisions of § 547(c)(3) meaningless. Under FMCC's reasoning, every enabling loan disqualified for protection under § 547(c)(3) would necessarily be examined under the provisions of § 547(c)(1). Such an application offends

---

**9.** At least one court has suggested that the contemporaneous exchange exception is applicable to enabling loan cases because § 547(c)(1) codifies the Supreme Court holding in *Dean v. Davis,* 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917). *General Motors Acceptance Corp. v. Martella,* 22 B.R. 649, 653 (Bkrtcy.D. Col.1982). In *Davis,* it was held that the transfer was not preferential when both parties to the transfer intended to make a secured loan, but the mortgage was not recorded until one week after the loan was made. There was no preference, the Court held, because there was no payment on an antecedent debt. This court has discovered no other authority to support the theory that *Dean v. Davis* was codified in the contemporaneous exchange exception and in fact has found only authority to the contrary. *See* Brody, *Practicing Under the Bankruptcy Reform Act* § 10.07 at 140–141 (1979). Yet, even if *Davis* retained vitality under the Code,

the case is not precedent for applying § 547(c)(1) to enabling loan cases. First, *Davis* is a case addressing the antecedent debt issue, not analyzing possible exceptions to a trustee's avoiding power. The antecedent debt problem is resolved by determining the date of transfer by reference to § 547(e). The contemporaneous exchange exception contained in § 547(c)(1) is not relevant if no antecedent debt is present. Second, the loan at issue in *Davis* was not an enabling loan within the meaning of § 547(c)(3). The loan was made to secure the repayment of several forged instruments. Therefore, the *Davis* case does not create a conflict between the contemporaneous exchange exception and the 10-day perfection period. Third, the delay in perfection in *Davis* was only one week and, therefore, the case cannot stand as authority for applying the contemporaneous exchange exception to security interests perfected beyond the 10-day period.

the well-settled principle of statutory interpretation that all parts of a statute, if at all possible, should be given effect. *Jarecki v. Searle & Co.,* 367 U.S. 303, 307–308, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961); *United States v. Menasche,* 348 U.S. 528, 538–539, 75 S.Ct. 513, 519, 99 L.Ed. 615 (1955). A statute should not be interpreted so as to render one part inoperative, superfluous or insignificant. *McLanahan v. Vernan (In re Gasteiger),* 471 F.Supp. 13, 15 (E.D.Tenn. 1977). If the contemporaneous exchange exception were applicable to all enabling loan cases, the 10-day grace period would serve as little more than an evidentiary presumption. In all cases where perfection occurred after 10 days, the court would be required to engage in extensive fact-finding to determine whether a palatable explanation was available for noncompliance.[10] Under FMCC's theory, enabling loans perfected beyond the 10-day period would be accorded protection equal to that realized by diligent creditors who complied with the express provisions of § 547(c)(3). The court is persuaded that it should not adopt such a doctrine.

Accordingly, the court finds that the transfer of the security interest to FMCC is an avoidable preference and that 11 U.S.C.A. § 547(c)(1) (West 1979) is not available to except from avoidance enabling loans perfected beyond the 10-day grace period. The proceeds from the sale of the automobile should be turned over to the trustee for administration.

---

10. Because the court finds that the contemporary exchange exception is not applicable to enabling loan cases, we do not address the factual issue of whether the conduct of FMCC in failing to perfect within 10 days is "satisfactorily explained" within the meaning of *Arnett.*