In re Nilet Lee HARLEY and Mary Willene Harley, Debtors.

Theo D. MANN, Trustee, Plaintiff,

v.

GENERAL MOTORS ACCEPTANCE CORPORATION and Thornton Chevrolet, Inc., Defendants.

Bankruptcy No. 83–00399N.
Adv. No. 83–0169N.

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

June 27, 1984.

Sanders, Mottola, Haugen & Goodson, Newnan, Ga., for plaintiff/trustee.

Michael D. Payne, John G. McCullough, Wilkinson & McCullough, Atlanta, Ga., for GMAC.

Walter P. Rowe, Hartley, Rowe & Fowler, P.C., Douglasville, Ga., for Thornton Chevrolet, Inc.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

On December 1, 1983, Theo D. Mann ("Mann"), as trustee for the Chapter 7 debtors, Nilet Lee and Mary Willene Harley, commenced the above-referenced adversary proceeding to recover a preferential transfer. The defendant, General Motors Acceptance Corporation ("GMAC"), filed an answer and counterclaim for relief from the automatic stay on December 16, 1983. Thereafter, Mann filed a motion to add a party defendant. On January 13, 1984, this Court granted Mann's motion to add Thornton Chevrolet, Inc. ("Thornton") as a party defendant. Thornton answered the complaint on February 16, 1984. This case is before the Court on a motion for summary judgment by Mann and cross-motions for summary judgment by GMAC and Thornton.

## FACTS

Briefly, the facts of the case are as follows: On May 12, 1983 Thornton entered into a contract with Nilet Lee Harley ("Harley") for the sale of a 1983 Chevrolet Silverado pickup truck ("pickup"). Harley paid a $1,200.00 cash down payment, traded in a 1979 GMC Sierra truck and received possession of the pickup. On that date, Harley executed a retail installment sales contract which granted to GMAC a security interest in the pickup. On the same date, Harley executed a State of Georgia MV–1 title application in order to obtain a certificate of title in Harley's name which reflected the security interest of GMAC. Thornton was delinquent in submitting the application for certificate of title with the Department of Motor Vehicles. Consequently, the certificate of title was not issued until June 28, 1983. Harley became unable to meet the payments on the vehicle, which now, pursuant to the agreement of the parties, has been sold for $8,855.00 with the proceeds being held in escrow pending resolution of this action.

## ISSUES

The issues to be decided in the instant case are: (1) whether Mann has satisfied all the elements of a preference under § 547(b) of the Bankruptcy Code; (2) whether the transfer falls under any one of the exceptions listed in § 547(c) of the Bankruptcy Code; and (3) whether, under § 550(b) of the Bankruptcy Code, GMAC was a "subsequent transferee for value which took in good faith and without any knowledge of the purported voidability of its lien as a preferential transfer".

## A. ELEMENTS OF A PREFERENCE

The first issue to be decided is whether Mann has satisfied the five elements of a preference. In order for a preference to be found, all five elements of § 547(b) must be met. *In re National Buy-Rite, Inc.*, 7 B.R. 407, Bankr.L.R. ¶ 67954, 3 CBC 2d 431 (1980). Section 547(b) states, in relevant part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enabled such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The brief filed by Thornton in support of the motion for summary judgment states at page 3 as follows:

It is not contended that the transfer which the trustee attacks does not constitute a technical preference.

Therefore, Thornton admits that these five elements of a preference have been satisfied. However, GMAC contends the elements have not been substantiated. As enumerated below, this Court concludes that the elements of a preference have been satisfied.

Prior to evaluating the elements of a preference, it must be determined whether there was a "transfer" of the debtor's property. § 101(40) of the Bankruptcy Code states:

(40) "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, *including retention of title as a security interest.* (emphasis added).

The fact that GMAC retained title to the pickup as security for the loan granted to Harley is evidence of a transfer within the meaning of § 101(40).

The first element of a preference states that the transfer "be to or for the benefit of a creditor". Sections 101(9) and 101(4) of the Bankruptcy Code define a "creditor" as an entity who has a right to payment against the debtor. GMAC's loan on the pickup made it a creditor within the meaning of the Bankruptcy Code.

The second element is that the transfer "be for or on account of an antecedent debt owed by the debtor before such transfer was made". In the present case, the security interest was created on May 12, 1983, whereas the certificate of title was not perfected until June 29, 1983. This lapse of forty-eight days created an antecedent debt. See 11 U.S.C. § 547(e)(2); O.C.G.A. § 40–3–50(b); 4 *Collier on Bankruptcy* ¶ 547.46[5] (15th ed.).

The next element requires that the debtor be insolvent. In § 547(f) the debtor is presumed to have been insolvent on and during the ninety days immediately preceding the date of the filing of the petition. This is a rebuttable presumption that is satisfied if no evidence on solvency is presented by the defendant. There was no evidence that Harley was solvent; therefore, this element is satisfied.

The fourth element states that the transfer must be made "on or within 90 days before the date of the filing of the petition". The transfer was made during this

90-day preference period because the certificate of title was perfected on June 29, 1983 while the petition for relief was filed on July 25, 1983.

Finally, in order for the fifth element of a preference to be satisfied, GMAC would have to receive more through this transfer than it would receive through a Chapter 7 distribution. Through this transfer GMAC received 100 percent of the amount owed, whereas, under a Chapter 7 distribution plan, GMAC would only receive a small percentage of that money as an unsecured creditor.

■ This Court concludes that the above-referenced elements have all been satisfied, and Mann will be allowed to recover the preference unless the transfer falls under one of the exceptions listed in § 547(c) of the Bankruptcy Code. It is the primary contention of GMAC and Thornton that the transfer was a contemporaneous exchange for new value, which falls under exception 547(c)(1).

## B. CONTEMPORANEOUS EXCHANGE UNDER § 547(c)(1)

Even if § 547(b) is satisfied, a transfer may not be avoided if the transfer falls under one of the exceptions listed in § 547(c) of the Bankruptcy Code. Section 547(c)(1) of the Bankruptcy Code (hereinafter referred to as the contemporaneous exchange exception) states that a trustee may not avoid a transfer:

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

In evaluating the applicability of the "contemporaneous exchange exception" to the instant case, the Court notes that two lines of cases that have developed in this area. First, there is a long line of well-reasoned cases that hold that the "contemporaneous exchange exception" is not applicable to cases of delayed perfection of security interests. *In re Davis*, 734 F.2d 604 (11th Cir.1984); *In re Arnett*, 731 F.2d 358 (6th Cir.1984); *Matter of Vance*, 721 F.2d 259 (9th Cir.1983); *In re Murray*, 27 B.R. 445 (Bkrtcy.M.D.Tenn.1983); *In re Davis*, 22 B.R. 644 (Bkrtcy.M.D.Ga.1982); *Valley Bank v. Vance*, 22 B.R. 26 (Bkrtcy.D.Idaho 1982); *In re Enlow*, 20 B.R. 480 (Bkrtcy.S. D.Ind.1982); *Matter of Christian*, 8 B.R. 816 (Bkrtcy.M.D.Fla.1981); *In re Meritt*, 7 B.R. 876 (Bkrtcy.W.D.Mo.1980).[1] The second line of cases espouses the view that the contemporaneous exchange exception applies to security interest cases as well as to

---

1. These cases have developed three rationales in support of the conclusion that § 547(c)(3) (hereinafter referred to as the enabling loan exception) is the *only* exception that is applicable to cases involving security interests. The first two rationales were discussed at length by Judge Moseley in his decision in *In re Davis, supra*, which has recently been followed by the Eleventh Circuit Court of Appeals in the same case.

The facts of the *Davis* case are substantially the same as in the instant case. Davis entered into a retail installment contract with Maxwell Ford Tractor, Inc. for the purchase of a 1981 Ford tractor, and a 1981 bush hog harrow, for a cash price of $49,300.00. Pursuant to the terms of the contract, Davis was to pay Maxwell Ford a down payment of $14,792.50 and the balance was to be financed by the Ford Motor Credit Company. Due to the vacation of a clerk in the Ford Motor Credit Albany branch, the check for recording the financing statement was not transmitted to the clerk of the Superior Court of Grady County, Georgia until fifteen days after Ford Motor Credit purchased the credit con-

tract. Judge Moseley concluded that § 547(c)(1) applied only to cash transactions because situations involving security interests were adequately covered by § 547(c)(3).

Section 547(c)(3) provides that a trustee may not avoid a transfer;

(3) of a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected before *ten days* after such security interest attaches; (emphasis added).

In the *Davis* case, the plaintiffs argued that § 547(c)(1) might be applied to the perfection of

cash and quasi-cash transactions. *In re Martella,* 22 B.R. 649 (D.Colo.1982); *In re Burnette,* 14 B.R. 795, 8 BCD 255 (Bkrtcy. E.D.Tenn.1981); *In re Arnett,* 13 B.R. 267, 7 BCD 1222, 4 CBC 2d 1365 (Bkrtcy.E.D. Tenn.1981), aff'd sub nom, *Ray v. Security*

*Mutual Finance Corporation,* 17 B.R. 912, Bankr.L.R. ¶ 68,644 (E.D.Tenn.1982), rev'd, 731 F.2d 358 (6th Cir.1984).[2]

■ The recent decision by the Eleventh Circuit Court of Appeals in *In re Davis,*

security interests during the preference period. The Court quoted a House of Representatives Report to refute the plaintiffs' argument and conclude that § 547(c)(1) applies only to cash and quasi-cash transactions:

> The first exception is for a transfer that was intended by all parties to be a contemporaneous exchange for new value, and was in fact substantially contemporaneous. Normally, a check is a credit transaction. However, for the purpose of this paragraph, a transfer involving a check is considered to be "intended to be contemporaneous," and if the check is presented for payment in the normal course of affairs, which the Uniform Commercial Code specifies as thirty days, U.C.C. § 3–503(2)(a), that will amount to a transfer that is "in fact substantially contemporaneous."

Judge Moseley determined that this piece of legislative history indicates that payment by check is the only type of credit transaction which might come within the contemporaneous exchange exception. Conversely, all security interest cases, such as the case *sub judice,* must fall within the enabling loan exception for a technical preference to become unavoidable. Accord: *In re Davis,* 734 F.2d 604 at 606 (11th Cir.1984).

The second rationale developed by the above-referenced line of cases draws on the maxim of statutory construction that *"expressio unius est exclusio alterius."* This second rationale concludes that allowing security cases to fall within the contemporaneous exchange exception would destroy the viability of the enabling loan exception. The justification for this point of view is that the enabling loan exception is more focused and narrow than the contemporaneous exchange exception. Judge Moseley explains:

> The traditional rules of statutory construction lead to the same result. It is an ancient maxim of statutory construction that where a statute provides for a remedy or for a thing to be done in a particular way then it negates all other similar remedies or alternative ways that the same thing might be done. (cite omitted). This maxim is stated *expressio unius est exclusio alterius. Id.* 11 U.S.C. § 547(c)(3) provides a mechanism by which liens to secure enabling loans might be excepted from avoidance. In doing so it negates the applicability of other means of exception. 11 U.S.C. § 547(c)(1) is in general; 11 U.S.C. § 547(c)(3) is specific; it refers to "a security interest" such as in this adversary proceeding.

Judge Moseley further states:

> If 11 U.S.C. § 547(c)(1) is given a construction which would permit it, as is argued by the

defendants, to be applied to transfers of liens to secure enabling loans, then 11 U.S.C. § 547(c)(3) becomes redundant and unnecessary.

This Court finds Judge Moseley's discussion persuasive. If both the contemporaneous exchange exception and the enabling loan exception are construed narrowly, then these exceptions may coexist without one eclipsing the function of the other. However, if the contemporaneous exchange exception is construed broadly, as GMAC and Thornton would have the Court construe the statute in the instant case, then the viability of the enabling loan exception is greatly diminished, if not destroyed. Accord: *In re Davis,* 734 F.2d 604 at 607 (11th Cir.1984) ("In addition, application of the contemporaneous exchange exception to enabling loans would render § 547(c)(3) virtually meaningless.")

Finally, the Eleventh Circuit examined § 547(c) of the Bankruptcy Code in relation to the prior Bankruptcy Act in order to ascertain the legislative intent behind the enabling loan exception of § 547(c)(3):

> Our conclusion is consistent with the policies underlying the statute. The establishment of a ten day grace period was an effort to create a national uniform perfection period for enabling loans. Congress shortened the period from twenty-one days under the Bankruptcy Act to ten days under the current law. *See In re Burnette,* 14 B.R. at 798–801 ("The idea was that the preference statute should establish a uniform grace period."). We hesitate to defeat this uniformity by adopting a rule that would extend the grace period for enabling loans indefinitely.

*In re Davis,* 734 F.2d 604 at 607 (11th Cir.1984).

2. This line of cases has two rationales in support of the conclusion that security interests may fall under the contemporaneous exchange exception. The first rationale derives from a piece of legislative history which suggests that the exceptions listed under § 547(c) are to be loosely interpreted and overlapping in nature:

> Section (c) contains exceptions to the trustee's avoiding power. If a creditor can qualify under any one of the exceptions, then he is protected to that extent. If he can qualify under several, he is protected by each to the extent that he can qualify under each.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 88 (1978), U.S.Code Cong. & Admin.News 1978 pp. 5787, 5874.

However, this piece of legislative history has been held to be unworkably broad as a basis for

*supra*, provides compelling authority for this Court to follow the first line of cases which hold that a security interest perfected in an untimely manner is voidable so long as the requirements of a technical preference are met and the transferee is unable to satisfy the exception enumerated in § 547(c)(3). (Section 547(c)(3) is set out in full in footnote 1.) The Eleventh Circuit decision, which comports with the view of the majority of bankruptcy courts and the two circuit courts to address the issue, states that "[t]he approach most consistent with legislative intent and the policies underlying the enactment of § 547(c) is that subsection (c)(1) is not available to protect security interests on enabling loans from avoidance." *In re Davis*, 734 F.2d at 606.

 Pursuant to *In re Davis*, the contemporaneous exchange exception of § 547(c)(1) is unavailable to GMAC, and GMAC's security interest is voidable unless perfection was completed within the 10-day time limit set forth in § 547(c)(3)(B). The Court notes that GMAC in fact had 20 days within which to perfect its security interest under Georgia law, O.C.G.A. § 40–3–50(b), in order to come within the 10-day time limit of § 547(c)(3)(B). Yet, the GMAC security interest was not perfected until 47 days after the pickup was purchased.

▉ Therefore, the Court concludes that the perfection of GMAC's security interest was a preferential transfer that may be avoided pursuant to § 547 of the Bankruptcy Code because all the elements were met and none of the exceptions were invoked.

## SUBSEQUENT TRANSFEREE UNDER § 550(b)

▉ Finally, this Court has considered GMAC's remaining argument that § 550(b) precludes recovery from GMAC on the grounds that GMAC is an immediate transferee of the subject security interest for value which GMAC took in good faith and without knowledge of the purported voidability of the lien. This Court holds that this argument has no merit because GMAC was the original lienholder under the installment sales contract. See 4 *Collier on Bankruptcy* ¶ 550.03[8] (15th ed.).

## CONCLUSION

Therefore, for the above-stated reasons, Mann's motion for summary judgment shall be and is hereby GRANTED, and motions for summary judgment by GMAC and Thornton shall be and are hereby DENIED.

IT IS SO ORDERED.

▉

---

establishing that § 547(c)(1) is meant to apply to cases involving security interests. As one Court stated:

> The legislative history does not reveal what sections might provide multiple protection or why a transferee would desire to qualify under more than one section because satisfaction of any section excepts the entire transfer from avoidance. Assuming some purpose for multiple protection, however, the legislative history cannot be interpreted, as FMCC argues, to suggest that all exceptions in § 547(c) are interchangeable and overlap. Each section has distinct prerequisites and to the extent one of those elements is absent, the section is inapplicable. Similarly, those sections that are inconsistent with each other will not be applied to one another.

*In re Murray*, 27 B.R. 445, 449, n. 7 (Bkrtcy.M.D.Tenn.1983).

The second rationale developed by the line of cases contra to *In re Davis* is that the contemporaneous exchange exception applies to security transactions because § 547(c)(1) was codified based upon the holdings of two security interest cases:

> Section 547(c)(1) of the Bankruptcy Code codifies the Supreme Court holdings in *Dean v. Davis*, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917), where it was held that the transfer was not preferential when both parties to the transfer intended to make a secured loan, but the mortgage on the property securing the loan was not recorded until one week after the loan was made.

*In re Martella*, 22 B.R. 649 (D.Colo.1982).

Notwithstanding the origin of the contemporaneous exchange exception, Congress expressly addressed the problem of perfection of security interests within the preference period in § 547(c)(3). Accordingly, this Court joins the line of cases exemplified by Judge Moseley's opinion in *In re Davis* and the Eleventh Circuit Court of Appeals' decision in the same case.