**In re NORTHWEST ERECTION, INC. a Montana corporation, Debtor.**

**NORTHWEST ERECTION, INC., Plaintiff,**

v.

**FIRST BANK (N.A.)—WESTERN MONTANA MISSOULA, a National Banking Association, and American Land Title Company, Defendants.**

**Bankruptcy No. 281–00178. Adv. No. 281/0068.**

United States Bankruptcy Court, D. Montana.

Jan. 10, 1986.

Edward A. Murphy, Datsopolous, Mac-Donald & Lind, Missoula, Mt. and R. Mort McDowell, Salt Lake City, Utah, for debtor.

George Goodrich, Missoula, Mt. for First Bank.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

The Defendants filed a motion for summary judgment contending there is no genuine issue of material fact in this action and they are entitled to judgment as a matter of law. The Plaintiff resists the motion. Hearing was held on January 8, 1986, after notice to all parties in interest.

The Plaintiff Debtor commenced this action to set aside as a preference, a Deed of Trust given to the Defendant Bank to secure a loan of $332,500.00. The undisputed facts show that on November 12, 1980, the Debtor corporation executed its promissory note for $332,500.00 and a trust indenture as security for repayment of the note. While the parties had been engaged in previous loan transactions, the November 12, 1980, loan was for new money. The Bank held the trust indenture for a period of 64 days before recording that document with the Missoula County Clerk and Recorder. Eighty nine days after the recording, the Debtor filed its Chapter 11 Bankruptcy Petition. On June 11, 1981, the Debtor filed this action claiming the recording of the trust indenture on January 14, 1981, was a

preference, in that such recording constituted a transfer of property to a creditor on account of an antecedent debt owed by the Debtor before the transfer was made, while the Debtor was insolvent and within 90 days of the filing of the Bankruptcy Petition, thereby enabling the creditor to receive more than it would receive under a Chapter 7 liquidation of the Debtor's assets. Thus, the Plaintiff Debtor seeks to have the transfer voided under Section 547(b) of the Bankruptcy Code. The Defendant Bank contends that the entire transaction, the lending of the money and the recording of the security instrument, was a contemporaneous exchange for new value and as such is brought within an exception to the preference rule as provided in Section 547(c)(1) of the 1978 Code. In addition, the Bank argues that the facts show the Debtor was solvent at the time of the loan, and further contends this Court should impose sanctions against the Debtor under Rule 37 for failure to make adequate discovery.

As to the first issue dealing with Section 547(c)(1), the Debtor relies upon the case of *In Re Arnett*, 731 F.2d 358 (6th Cir.1984), which discussed the interplay of subsections 547(c)(1) and 547(c)(3). The Sixth Circuit held:

"Most courts, however, have concluded that an expansive reading of Section 547(c)(1) renders Section 547(c)(3) redundant and superfluous in enabling loan context, and thus, is an unwarranted and erroneous construction. *In Re Murray*, 27 B.R. 445 (Bkrtcy, Tenn., 1983); *In Re Davis*, supra [22 B.R. 644 (Bkrtcy.M.D. Ga.1982)]; *In Re Vance*, 22 B.R. 26 (Bkrtcy, D.Idaho, 1982); *In Re Enlow*, supra [20 B.R. 480 (Bkrtcy.Ind.1982)]; *In Re Meritt*, supra [7 B.R. 876 (Bkrtcy. W.D.Mo.1980)]. These courts have been persuaded that Congress intended that Section 547(c)(3) to be the exclusive provision applicable in the enabling loan context. 'Expressio unius est exclusius alterius.'" Ibid at 362–363

*Arnett* was followed by the Eleventh Circuit in the case of *Gower, Trustee v. Ford Motor Credit Company*, 734 F.2d 604 (11th Cir.,1984), which held:

"Several Bankruptcy Courts have held that a holder of an interest securing an enabling loan may avail himself of 547(c)(1) if he did not perfect within the ten day period required under subsection (c)(3) (citing cases) * * * Under this approach, a security interest automatically is protected under 547(c)(3) if filed within ten days of the transfer, but an untimely perfection may still be protected following a factual inquiry into the reason for the delay, the intent of the parties and the contemporaneous nature of the exchange. See *In Re Arnett*, 17 B.R. [912 (Bkrtcy.E.D.Tenn.1982)] at 914. We disagree with this construction and adopt the view of the majority of Bankruptcy Courts and the two Circuit Courts to address the issue. The approach most consistent with legislative intent and the policies underlying the enactment of 547(c) is that subsection (c)(1) is not available to protect security interests on enabling loans from avoidance. See *In Re Arnett*, 731 F.2d 358 (6th Cir.1984); *Matter of Vance*, 721 F.2d 259 (9th Cir., 1983); *In Re Murray*, 27 B.R. 445 (Bkrtcy, M.D.Tenn., 1983); *In Re Davis*, 22 B.R. 644 (Bkrtcy, M.D.Ga., 1982); *Valley Bank v. Vance*, 22 B.R. 26 (Bkrtcy, D.Idaho, 1982); *In Re Enlow*, 20 B.R. 480 (Bkrtcy, S.D.Ind., 1982); *Matter of Christian*, 8 B.R. 816 (Bkrtcy, M.D. Fla., 1981); *In Re Meritt*, 7 B.R. 876 (Bkrtcy, W.D.Mo., 1980)."

The *Vance* case cited above from this Circuit stated at 721 F.2d 262:

"The legislative history does not explicitly state that subsections (c)(1) and (c)(3) overlap. The legislative history does not explicitly state that Congress intended Section 547(c)(1) to except certain transactions involving payment by check and that section 547(c)(3) excepts certain transactions involving enabling loans. These are distinct types of transactions.

The cited legislative history is not persuasive for the proposition that Section 547(c)(1) and Section 547(c)(3) overlap in their coverage of transactions. Our conclusion is further supported by the fact that applying Section 547(c)(1) to enabling loan transactions would make Section 547(c)(3) superfluous. See *In Re Christian*, 8 B.R. at 819. If the contemporaneous exchange exception of Section 547(c)(1) were applicable to all purchase money security transactions, then the more specific provisions of Section 547(c)(3), such as the 10–day perfection requirement, would be meaningless. We are not persuaded that Congress intended this result."

I am bound by the law of this circuit which clearly holds that the perfection of the security interest must be made within 10 days in order to rely on the contemporaneous exchange exception to the preference rule. Because the security interest of the Bank was not perfected within 10 days, it does not qualify under the exception. Even though the loan in this case was not an enabling loan, i.e., a purchase money loan, *Arnett* holds the 10 day rule applies to the perfection of any security interest, such as the Deed of Trust in this case. 731 F.2d at 363 and 364. Therefore, the Bank's contention that it is entitled to judgment as a matter of law under under Section 547(c)(1) is without merit.

■ The second issue argued by the Bank is that the Debtor was solvent at the date of the granting of the loan and the security instrument. Section 547(b)(3) requires, as one of the 5 elements of a preference, that the Debtor be insolvent at the time of transfer. The transfer in this case was January 14, 1981. Under Section 101(29) insolvent is defined as follows:

"(A) with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

(i) property transfered, concealed or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under Section 522 of this title—."

The crux of any issue on solvency deals with the meaning and application of fair valuation. See *2 Collier on Bankruptcy*, Sec. 101.26(4) (15th ed., 1984). *Collier* explains that fair value does not mean the amount the property or assets would bring in the worst or best of circumstances, but rather the amount which could be realized if the Debtor took a reasonable time to collect its debts and sell its property. The emphasis on the element of the time it took to collect moneys due the Debtor is crucial in this case because in 1980 and 1981 the Debtor was claiming large sums due it from contract receivables which resulted in litigation. While the Bankruptcy Code provides a presumption that the Debtor was insolvent during 90 days before its petition was filed, (11 U.S.C. 547(f), under Rule 301, Federal Rules of Evidence, the Bank has the burden of going forward with the evidence to rebut the presumption, but the burden of proof on insolvency rests with the Debtor, which burden is aided by the presumption. Both parties have submitted balance sheets of the Debtor to support their respective positions. An affidavit by the Bank officer contends the Debtor showed the Bank it was solvent, while an affidavit by the Debtor shows a later balance sheet which shows it was insolvent. Obviously, from the above discussion, disputed facts have been presented by each party which do not lend this case to resolution by summary judgment.

■ The third issue presented by the Defendants is a request for sanctions under Rule 37 for the failure of the Plaintiff to make adequate discovery. As an example of the evasive answers provided by the Plaintiff to the Defendants, the Defendants cite Interrogatory 13, which reads:

"List and describe in detail, giving amounts, the financial liabilities claimed by Plaintiff as of:

(a) 89 days prior to the filing of the Plaintiff's Petition under Chapter 11 in this matter, and

(b) November 12, 1980.

*Answer:* Plaintiff's accounting data has not been assembled and summarized as of 89 days prior to Plaintiff's petition and as of November 12, 1980. The information sought by the Defendant may be derived from an examination or inspection of the accounting data available and the burden of deriving such information is substantially the same for the Defendant as for Plaintiff. Accordingly, pursuant to Rule 33(c) of the Federal Rules of Civil Procedure, Plaintiff will afford Defendant reasonable opportunity to examine, audit or inspect all such relevant accounting data and to make copies, compilations, abstracts or summaries thereof. Plaintiff is in the process of preparing information sought as of January 14, 1981, and will make such information available to Defendant when completed."

The answer to Interrogatory 4 is the same. In other answers, the Plaintiff stated it has no expert witness (counsel for Plaintiff also stated such fact at oral argument) on the issue of insolvency. This action was filed by the Plaintiff over four years ago and it has not adequately answered pertinent interrogatories. It is a case ripe for sanctions under Rule 37. I prefer, however, that such sanctions be addressed at trial of this cause if the Plaintiff seeks to introduce evidence on the issue of insolvency based on data which was not divulged to the Defendants. No such evidence will be admitted into evidence, nor will any expert witness be allowed to testify on the issue of insolvency for the Plaintiff. Other requests for sanctions by the Defendants may be presented at trial of the cause.

For the reasons stated above, the motion for summary judgment is denied.

IT IS ORDERED this case is set for trial for Thursday, February 13, 1986, at 1:30 o'clock P.M., Courtroom, Federal Building, Missoula, Montana, with proper sanctions pursuant to Rule 37, F.R.Civ.P. to be invoked at such trial.