**In re Ronnie D. (Dean) WILLIAMS, Debtor.**

**Thomas C. SCOTT, Trustee in Bankruptcy, Plaintiff,**

v.

**FIFTH THIRD BANK, Defendant.**

**Bankruptcy No. 2–87–01380. Adv. No. 2–87–0218.**

United States Bankruptcy Court, S.D. Ohio, E.D.

July 15, 1988.

Susan L. Rhiel, Thompson, Hine and Flory, Columbus, Ohio, for plaintiff.

Ralph E. Dill, Gurvis, Kauffman, Kurgis & Dill, Columbus, Ohio, for defendant.

## ORDER SUSTAINING MOTION FOR PARTIAL SUMMARY JUDGMENT

BARBARA J. SELLERS, Bankruptcy Judge.

Plaintiff Thomas C. Scott, the trustee in bankruptcy ("Trustee") for the Chapter 7 case of Ronnie D. Williams, has filed a motion seeking partial summary judgment in this adversary proceeding. The Trustee's motion, which seeks judgment on Count I of the complaint, was opposed by defendant Fifth Third Bank ("Bank"). Following a reply to the Bank's opposition, the matter is before the Court for decision.

The Court has jurisdiction in this proceeding under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This matter is either a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), (K), and (O) or is a non-core matter for which the parties have consented to entry of a final order by this bankruptcy judge.

The facts in this matter are basically undisputed. On July 26, 1986, Ronnie D. Williams ("Debtor") purchased a 1987 Dodge Charger automobile from Trader Bud's Westside Dodge ("Trader Bud's"). To finance that purchase the Debtor entered into a Variable Rate Installment Contract and Security Agreement (the "Agreement") with the Bank. The Agreement obligated the Debtor to repay the loan with interest and granted the Bank a security interest in the vehicle.

On April 3, 1987 the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Approximately one month later the automobile was repossessed by the Bank. On July 10, 1987, this Court entered an order abandoning the vehicle from the bankruptcy estate and granting the Bank relief from the automatic stay imposed by 11 U.S.C. § 362(a) to pursue its rights under state law with regard to the vehicle.

At the time the Debtor purchased the vehicle, he elected also to purchase through Trader Bud's certain credit life and disability insurance relating to that obligation. That coverage was effectuated by payment from the Debtor, financed as part of his obligation to the Bank, of one-time premium payments of $432.43 and $838.88. The insurance coverage was through a group life insurance policy with a credit disability supplemental agreement issued to Trader Bud's by The Credit Life Insurance Company ("Credit Life"). Under that arrangement the Debtor was issued an individual certificate of insurance by Credit Life.

It is uncontested that, under the terms of the insurance agreement between Credit Life and Trader Bud's, repossession of the automobile terminated the insurance coverage and gave rise to a right of refund for unearned premiums. Those unearned premiums were to be remitted by Credit Life to Trader Bud's for the benefit of the Debtor. Trader Bud's was then obligated to pay or credit the refunds to the Debtor. The certificate of insurance issued to the Debtor further provided that he was to be given a refund or a credit on his account of any unearned premiums if the insurance coverage terminated before its term had expired. Accordingly, when the Bank repossessed the vehicle, Credit Life refunded the unearned premiums to Trader Bud's. Trader Bud's, however, paid those refunds over to the Bank as the holder of a lien against the vehicle.

The Trustee asserts that the refunds were part of the bankruptcy estate, were not subject to any interest of the Bank and, therefore, should be paid over to the trustee as the representative of the bankruptcy estate. The Bank, on the other hand, maintains that it has an interest in those refunded premiums and may apply them to reduce

the balance of its obligation from the Debtor. After application of proceeds from the sale of the vehicle, that remaining obligation was $7,017.74 as of July 26, 1987.

The Agreement, under which the Debtor is the "Borrower", contains several provisions relevant to the dispute before the Court. The granting portion of the Agreement states:

"As collateral for the payment of this loan, Borrower grant(s) to Bank a security interest in the following property together with all equipment now installed or later to be installed or replaced on the collateral and insurance or other proceeds thereon, all in accordance with the terms of the Installment Contract and Security Agreement ..."

In the Truth in Lending disclosure portion of the Agreement, the following statement appears:

"You are giving a security interest in:
[X] The goods or property being purchased.
[X] Deposits or other monies owned by you and held by Bank."

Paragraph 2 of the reverse of the Agreement defines the "security interest" granted as:

"Borrower grants Bank a security interest in the property described on the reverse side hereof (said property and all such replacements, attachments, accessories and equipment hereafter referred to as the "Property"), together with all replacements thereof and all attachments, accessories and equipment now or hereafter attached, added or affixed thereto."

To establish its interest, which the Bank characterizes as "either a security interest or something else", the Bank relies upon the language in the granting clause quoted above and argues that the phrase "insurance or other proceeds thereon" refers to the credit life and disability insurance purchased by the Debtor. That reference, according to the Bank, makes the insurance premiums part of the collateral for the loan. The Bank also relies upon part 7 of the reverse of the Agreement which states that:

"Credit life insurance and credit disability insurance coverage, if purchased, are provided in accordance with the separate certificate and policy being issued herewith ..."

■ Upon examination, the Court finds that the phrase "insurance or other proceeds thereon" in the granting portion of the Agreement refers only to property damage or collision insurance covering the vehicle. That phrase does not bring within the security interest granted to the Bank any credit life or disability insurance premiums purchased by a debtor and unrelated to protection for the vehicle. Further, the statement relied upon by the Bank in part 7 of the reverse of the Agreement appears to have no specific relevance to the creation of an interest in the Bank in the insurance premiums paid by the Debtor, but financed by the Bank. In the Court's opinion, the thrust of the quoted statement is to make it clear that the Bank, by the Agreement, is not providing such insurance.

■ The Bank also asserts that language in both the insurance policy and the Debtor's certificate of insurance, providing for refund or credit of unearned premiums to the Debtor by the insured dealer, creates a right in such refunded premiums in favor of the Bank. The Court finds that this provision in the insurance policy does not and cannot create an interest in the Bank, however, if such interest has not been created by the terms of the Agreement between the Bank and the Debtor. Credit Life is not determining the appropriateness of refund or credit to the Debtor's account. That decision depends upon the specific terms of any agreement between the Debtor and Trader Bud's, or as in this case, between the Bank, as the lender financing the purchase of the vehicle, and the Debtor, as the borrower. The group policy does not increase, augment or establish rights between the Debtor and the Bank which are not created by the contract between those two parties. That finding also extends to language in the certificate of insurance which indicates that the Debtor either will be given a refund or a credit on his account for the unearned premium, if

the insurance coverage terminates before its term has expired. Again, by refunding the sums to Trader Bud's, Credit Life is not attempting to determine various parties' rights in those refunds except to indicate that the right to retain those funds no longer remains with Credit Life.

Finally, the Bank argues that creation and perfection of its interest are not governed by Chapter 1309 of the Ohio Revised Code (Article 9 of the Uniform Commercial Code), but rather are a matter of contract between the parties. This argument is premature, however, because the issue of the applicability of Chapter 1309 does not arise unless or until it has been determined that an interest in the premiums has been created by the terms of the Agreement.

The Court finds that no interest in the insurance premiums was created in favor of the Bank under the terms of the Agreement. Therefore, rights to any potential refund of unearned premiums for the terminated credit life and disability insurance were property of the Debtor as of the commencement of the bankruptcy case. Such rights vested in the Trustee by operation of law and are property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a). By such finding the Trustee is entitled to summary judgment on Count I of his Complaint and to a turnover of the $786.09 refunded on the Debtor's account by Credit Life.

Although the Bank raised arguments relating to defenses based upon statutes of limitations and service of process deficiencies, such arguments were not supported and are found by the Court to be without merit.

Judgment shall be entered consistent with the terms of this Order.

IT IS SO ORDERED.