In re Charles Lee TROTT, Debtor.

William B. LOGAN, Jr., Trustee of the Bankruptcy Estate of Charles Lee Trott, Plaintiff,

v.

COLUMBUS POSTAL EMPLOYEES CREDIT UNION, INC., et al., Defendants.

Bankruptcy No. 2–87–01340.
Adv. No. 2–87–0283.

United States Bankruptcy Court, S.D. Ohio, E.D.

July 20, 1988.

William B. Logan, Jr., Luper, Wolinetz, Sheriff & Neidenthal, Columbus, Ohio, trustee/plaintiff.

Jack L. Johnson, Columbus, Ohio, for defendant Columbus Postal Employees Credit Union, Inc.

Stephen E. Schafer, Columbus, Ohio, for defendant Charles Lee Trott.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. trustee.

Robert H. Farber, Jr., Columbus, Ohio, for debtor.

F. Richard Heath, Hite & Heath, Utica, Ohio, for Cambridge PCA.

Frank M. Pees, Worthington, Ohio, Chapter 13 trustee.

Michelle T. Sutter, Baker & Hostetler, Columbus, Ohio, for trustee.

## OPINION AND ORDER

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Statement*

This matter is before the Court upon the Complaint for Preference filed by William B. Logan, Jr., the duly-appointed Chapter 7 trustee ("Trustee") in this case. The defendants herein, the debtor Charles Lee Trott and Columbus Postal Employees Credit Union, Inc. ("Credit Union"), have filed timely answers to the Trustee's Complaint. All parties have agreed to submit this matter for decision on the basis of stipulations of fact.

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this judicial district. This is a core proceeding which the Court is empowered to hear and determine in accordance with 28 U.S.C. § 157(b)(1) and (2)(F). The following opinion constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### II. *Factual Findings*

The Court hereby adopts as its factual findings the stipulations of fact ("Stipula-

tion") jointly submitted by the parties. The Stipulation is set forth *verbatim* below:

1. On March 11, 1987, Charles Lee Trott, a member of the Defendant credit union applied for a loan to purchase an automobile and executed the attached "Disclosure Form, Promissory Note and Security Agreement" (Exhibit 1). Said loan was approved by Defendant, Columbus Postal Employees Credit Union, Inc. ("Credit Union").

2. On March 13, 1987 the subject automobile was delivered to Charles Lee Trott by Taylor Chevrolet, Inc. in accordance with the attached contract between Trott and Taylor Chevrolet dated March 11, 1987 (Exhibit 2).

3. On March 19, 1987 the State of Ohio Certificate of Title to the subject automobile was issued by the Franklin County Clerk of Courts (Exhibit 3). This Certificate of Title was subsequently delivered to Defendant Credit Union.

4. On March 23, 1987 Defendant Credit Union issued its check in the amount of $10,750.00 to Taylor Chevrolet (Exhibit 4). On March 24, 1987 Defendant Credit Union delivered the proper documents for a lien notation to the Franklin County Clerk of Courts together with the required fee. On March 24, 1987 the Clerk of Courts noted the lien of Defendant Credit Union on the Certificate of Title (Exhibit 5) and delivered a receipt for the notation fee to Defendant Credit Union (Exhibit 6).

5. On April 2, 1987 Charles Lee Trott filed his voluntary petition in bankruptcy under 11 U.S.C. Chapter 7 in this Court. On April 7, 1987 Plaintiff was appointed Interim Chapter 7 Trustee, and became the Trustee in this case, by operation of law, on May 11, 1987.

6. It is further stipulated that if the Defendant's lien had never been noted on the title, Defendant would be a general unsecured creditor, and in this case or in a hypothetical Chapter 7 liquidation, would receive less than it would be entitled to receive as a secured creditor by virtue of the notation of the lien on the Certificate of Title.

7. The value of the automobile here in question, a 1988 Chevrolet Corsica, on the date of the filing of the bankruptcy filing was at least $11,500.00. The amount due to the Defendant under the terms of the loan contract is $11,997.55.

8. The parties agree that these stipulated facts are all the facts to be considered by the Court unless additional facts are provided to the Court upon request by the Court. The parties agree that additional facts will be provided, upon request, and that a hearing may be set if there is any dispute as to a fact to be provided to the Court pursuant to such request.

9. It is stipulated between the parties that all exhibits attached to the Stipulation of Facts are admissible into evidence in this proceeding.

10. It is stipulated between the parties that the Trustee has met his burden of proof on all elements required to be proven by a bankruptcy trustee in order to avoid a preferential transfer under the provisions of 11 U.S.C. § 547(b) except the element as to the meaning or legal interpretation of the meaning of the word "possession" as used in said section [sic]; and the effect of Ohio Revised Code § 4505.04 on Section 11 U.S.C. § 547(b) [sic] and the meaning or legal interpretation of the word "possession" as used in said § 547(b) [sic].

11. It is further stipulated that in the event that the preference of defendant credit union [sic] is deemed to be avoidable, that said lien shall be preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 551.

12. It is further stipulated that the only issue in this case is the legal meaning of the word "possession" as used in 11 U.S.C. § 547(b) [sic] in conjunction with Ohio Revised Code 4505.04, and more specifically the question is: On what date did the debtor receive "possession" of the automobile as that word is used in the provisions of § 547(b) [sic] and Ohio Revised Code 4505.04?.

13. The parties stipulate that this issue shall be determined by the Court,

based upon the applicable provisions of the Bankruptcy Code, the provisions of Ohio Revised Code Section 4505.04, and any other applicable law, with the Court to determine what law applies under the facts of this case and the interpretation of the word "possession" as used by the Bankruptcy Code and the Ohio Revised Code.

### III. *Legal Discussion*

■ At the outset, the Court notes that the parties' reference in the Stipulation to § 547(b) of the Bankruptcy Code is erroneous. The issue at bar arises from conflicting interpretations of the word "possession" contained in § 547(c)(3)(B) of the Code.

Neither the Trustee nor the Credit Union disputes that all the elements of a preferential transfer are present in this case. The transfer of the security interest in debtor's automobile was made to, or for the benefit of, the Credit Union, on account of an antecedent debt, while the debtor was insolvent, within 90 days of the filing of the bankruptcy petition and enabled the Credit Union to receive more than it would realize in a Chapter 7 liquidation. Accordingly, the Trustee may avoid the Credit Union's lien on the automobile unless the transfer is excepted from avoidance under one of the subsections of § 547(c) of the Code.

The Credit Union's defense is based upon § 547(c)(3)(B)—the so-called "enabling loan" exception to the Trustee's avoiding powers. Section 547(c)(3)(B) provides as follows:

(c) The trustee may not avoid under this section a transfer—

. . . .

(3) that creates a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is *perfected on or before 10 days after* the debtor receives *possession* of such property; . . . . (Emphasis added).

The Credit Union submits that perfection of its security interest did occur within ten days after the debtor received possession of the subject automobile as required by § 547(c)(3). The Credit Union's argument is premised upon its interpretation of the word "possession" contained in § 547(c)(3)(B). Debtor's possession of the automobile, the Credit Union states, should be deemed to commence on March 19, 1987, the date the State of Ohio issued a certificate of title to debtor. According to the Credit Union, because its lien was noted on debtor's certificate of title on March 24, 1987, a mere five days after the date the certificate of title issued, the enabling loan exception of § 547(c)(3) precludes the Trustee from avoiding the Credit Union's lien. The Trustee argues that possession of the automobile, within the meaning of § 547(c)(3)(B), occurred when the debtor took delivery of the automobile from Taylor Chevrolet on March 13, 1987. Since perfection of the Credit Union's security interest through notation of its lien on the certificate of title did not occur until March 24, 1987, eleven days after debtor received delivery of the automobile, the Trustee submits that the Credit Union may not invoke the enabling loan exception in this case.

The lynchpin of the Credit Union's argument is that, by operation of Ohio Revised Code ("O.R.C.") § 4505.04, the debtor could not have possibly obtained possession of the automobile until a certificate of title was issued to him. O.R.C. § 4505.04 provides as follows:

No person acquiring a motor vehicle from the owner thereof, whether such owner is a manufacturer, importer, dealer, or otherwise, shall acquire any right, title, claim, or interest in or to said motor vehicle until such person has had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for it;

nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title, or manufacturer's or importer's certificate for said motor vehicle, for a valuable consideration.

No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:

(A) By a certificate of title or a manufacturer's or importer's certificate issued in accordance with sections 4505.-01 to 4505.19, inclusive, of the Revised Code.

(B) By admission in the pleadings or stipulation of the parties.

According to the Credit Union, possession, as the term is used in § 547(c)(3)(B), is synonymous with a "right, title, claim or interest," which, under O.R.C. § 4505.04, cannot be acquired until a certificate of title issues.

The argument advanced by the Credit Union has no basis in law or logic. The Credit Union has cited no persuasive authority in support of its position. The unreported decision cited by the Credit Union—*In re Scott Thomas Kinsbury*, Adv. Pro. No. 2–85–0046 (Bankr.S.D.Ohio April 25, 1986) [1]—was decided under a former version of 11 U.S.C. § 547(c)(3)(B) (which is discussed *infra*) and, therefore, has no precedential value in the present case. Aside from its citation of the unreported, inapposite *Kinsbury* decision, the Credit Union has offered no other authority in support of its position.

■ The Credit Union's argument is also analytically flawed: it is based upon the Credit Union's confusion of the concepts of possession and ownership. The Credit Union submits that these concepts are essentially synonymous. The Court disagrees. Although possession is not defined within the Bankruptcy Code, in interpreting this term there is simply no reason for the Court to depart from the definition of the word possession which has gained acceptance throughout the law:

> The detention and control, or the manual or ideal custody, of anything which may be the subject of property, for one's use and enjoyment, either as owner or as the proprietor of a qualified right in it, and either held personally or by another who exercises it in one's place and name. Act or state of possessing. That condition of facts under which one can exercise his power over a corporeal thing at his pleasure to the exclusion of all other persons.

*Black's Law Dictionary* 1047 (5th ed. 1979). Under the foregoing definition, it is readily apparent that one may exercise control or manual custody over property without having an ownership interest therein. In addition, although the precise issue before the Court does not appear to have been addressed in a reported decision, the courts applying the enabling loan exception (as amended in 1984) have, at least implicitly, interpreted the word possession in § 547(c)(3)(B) as meaning physical control or custody of the collateral, as opposed to the acquisition of a right of ownership therein. *See, e.g., Ledford v. Avco Finance (Matter of Durham)*, 56 B.R. 145, 147–48 (Bankr.S.D.Ohio 1985); *In re Millerburg*, 61 B.R. 125 n. 2 (Bankr.E.D.N.C. 1986); *In re Scoviac*, 74 B.R. 635, 636–638 (Bankr.N.D.Fla.1987). Hence, Credit Union's contention that the debtor could not have taken *possession* of the automobile until he acquired ownership rights therein through the issuance of a certificate of title must be rejected.

Further, the construction of the word possession urged by the Credit Union would effectively negate Congress' 1984 amendment of § 547(c)(3)(B)'s enabling loan exception. Prior to the Bankruptcy

---

1. The Credit Union's citation of the unreported *Kinsbury* case, without attachment thereof, violates LBR 5.9, which provides:

    If unreported opinions are cited, copies of the opinion shall be attached to the pleadings, briefs or memoranda and shall be furnished to opposing counsel, and such attachments shall be an exception to the twenty (20) page limitation of LBR 5.8. Failure to submit such attachments may be grounds for striking the pleading.

Amendments and Federal Judgeship Act of 1984, 11 U.S.C. § 547(c)(3) read as follows:

(c) The trustee may not avoid under this section a transfer—

(3) of a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) *that is perfected before 10 days after such security interest attaches;...* (Emphasis added).

Subsequent to the 1984 amendments, subsection (B) of § 547(c)(3) was changed to: "that is perfected on or before 10 days *after the debtor receives possession of such property.*" 11 U.S.C. § 547(c)(3)(B) (emphasis added). Judge Waldron, in *Ledford v. General Motors Acceptance Corp. (Matter of Lorandos)*, 58 B.R. 519 (Bankr. S.D.Ohio 1986), discussed the policies underlying the 1984 amendment of the enabling loan exception as follows:

No legislative history can be found to explain the reasoning behind the change. It has been suggested that it was to comport with Uniform Commercial Code § 9–301(2) which gives a purchase money secured creditor a ten (10) day grace period to file the financing statement, computed from the date the "debtor receives possession of the collateral," to gain priority over a lien creditor whose rights "arise between the time the security interest attaches and the time of filing." *See* Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 Vand.L.Rev. 713, 780 (1985) and Kaye, *Preferences Under the New Bankruptcy Code*, 54 Am.Bankr.L.J. 197, 205 (1980) (discussing pitfalls between the U.C.C. and the Bankruptcy Code as a result of the change from the Bankruptcy Act to the Bankruptcy Code in 1978). Another

possible reason for the change is to ensure uniformity in the granting of exceptions to the preference statute ... [T]he time of attachment varies according to state law. For example, in Ohio, attachment does not occur until three events take place:

"(1) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ...; and

(2) Value has been given; and

(3) The debtor has rights in the collateral."

*Ohio Rev.Code Ann.* § 1309.14 (Page Supp.1984). But a debtor cannot acquire rights in the case of a motor vehicle until a Certificate of Title is issued. *Ohio Rev.Code Ann.* § 4505.04 (Page Supp. 1985); *In re Stump*, 51 B.R. [482] at 484 (Bankr.S.D.Ohio 1985). This contrasts with the law in Pennsylvania, where a security interest attaches upon the debtor signing the security agreement, the giving of value by the secured party and the debtor acquiring rights in the collateral which can be accomplished by the debtor taking possession of the automobile. In Pennsylvania, therefore, a debtor does not need to have a Certificate of Title to acquire rights in the collateral, although for the security interest to be perfected, a notation of the lien must be made on the Certificate of Title. *Union Bank & Trust Co., Erie v. Baker (In re Tressler)*, 771 F.2d 791, 793 (3rd Cir. 1985).

The absence of cases interpreting the current enactment of 11 U.S.C. § 547(c)(3)(B) may result from the clearer factual test that would in most cases eliminate the need for judicial decision. 58 B.R. at 522–23. *See also,* 4 *Collier on Bankruptcy* ¶ 547.11 at 547–46 to 547–47 n. 2 (15th ed. 1988).

As Judge Waldron noted in *Lorandos,* the 1984 amendment of § 547(c)(3)(B) was intended to permit uniform application of the enabling loan exception by providing a clear factual test for ascertaining when the ten-day perfection period commences. The

Credit Union's interpretation of the word possession would stand § 547(c)(3)(B) on its head, resulting in reversion to an enabling loan exception that measures the ten-day perfection period by reference to the time of attachment (which varies from state to state) as opposed to the time when possession of the collateral is taken. Such an interpretation would destroy the uniformity in application of the enabling loan exception sought to be achieved by the 1984 amendments. In short, neither decisional law nor policy supports the argument advanced by the Credit Union in the case *sub judice*.

Based upon the foregoing, the Court hereby ORDERS that judgment in favor of the Trustee on the Complaint for Preference be entered forthwith.

IT IS SO ORDERED.