In re James M. WINNETT, Clarissa N. Winnett, Debtors.

Thomas C. SCOTT, Trustee in Bankruptcy for James M. Winnett and Clarissa N. Winnett, Plaintiffs,

v.

The McARTHUR SAVINGS & LOAN COMPANY, Defendant.

Bankruptcy No. 2–87–05433.
Adv. No. 2–88–0208.

United States Bankruptcy Court, S.D. Ohio, E.D.

June 30, 1989.

Thomas R. Allen, Thompson, Hine and Flory, Columbus, Ohio, for plaintiffs.

David M. Whittaker, Luper, Wolinetz, Sheriff and Neidenthal, Columbus, Ohio, for defendant.

## OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

This cause came on for consideration on the Motions for Summary Judgment filed

by both of the parties in this adversary proceeding. Both of the parties have also submitted Memoranda Contra to the other's Motion. This adversary proceeding was commenced upon the Complaint to Avoid and Recover Preference, to Avoid & Recover Transfer, and for Turnover of Property of the Estate, filed by the duly appointed Trustee in the above-captioned Chapter 7 case. At issue are a security interest in the Debtors' mobile home and a refund of a life insurance premium.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (F).

## A. *The Mobile Home*

The facts material to resolution of this matter are without dispute and may be summarized as follows:

On or about October 3, 1987, the Debtors entered into a contract to purchase a 1987 Redman New Moon mobile home, serial No. 112A5044 from Remy's Mobile Homes, Inc. in McArthur, Ohio. On October 24, 1987, the Debtors applied for a loan from the Defendant, McArthur Savings & Loan, to finance the purchase of the mobile home. The application was granted, and on October 30, 1987, the Debtors executed a Simple Interest Note, Disclosure & Security Agreement (hereinafter "security agreement") with the Defendant. The Defendant loaned the $15,623.11, and the Debtors granted the Defendant a security interest in the mobile home to be acquired.

Sometime between November 2 and November 6, 1987, Remy delivered the mobile home to the Debtors' property on Eagle Hills Road in Vinton County, Ohio. Sometime before November 9, 1987, Remy returned to the Debtors' property to level and tie down the mobile home, remove the tires, set it on blocks, install the steps and equip it with skirting. Sometime between November 9 and November 16, the Debtor connected the plumbing and electricity. It was two or three weeks later before the gas was hooked up.

On Monday, November 9, 1987, the Debtors paid the down payment for the mobile home and received the keys. On that same date, an employee of Remy took the title of the mobile home to the Defendant and received a check for the balance of the purchase price. Title to the mobile home was vested in the Debtors on November 18, 1987, and the Defendant's lien was noted thereon on the same date. The Debtors filed a Petition for Relief under Chapter 7 of the Bankruptcy Code on December 7, 1987.

Based on the foregoing facts, the Trustee asserts that the perfection of the Defendant's lien constitutes a preferential transfer under § 547(b) of the Bankruptcy Code. The Trustee's complaint seeks to avoid the preferential transfer pursuant to § 547, and/or recover the property transferred or its value pursuant to § 550. The Defendant does not contest that all elements of § 547(b) are satisfied, but it does contend that the transaction may not be avoided by the Trustee by virtue of § 547(c)(1) or § 547(c)(3).

Section 547(c)(3) contains the "enabling loan exception" and provides that the Trustee may not avoid a transfer—

(3) that creates a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected on or before 10 days after the debtor receives possession of such property.

The Trustee concedes that all elements of the exception are satisfied except that regarding possession of the property contained in § 547(c)(3)(B). This is the pivotal issue to be resolved by the Court.

The Memoranda submitted by the parties reflect exhaustive research conducted on this point. In addition, the Court

conducted extensive independent research, to no avail; there are no cases directly on point or analogous to the instant case. However, guidance is provided by courts which have considered the issue of possession. As noted by both parties and the courts, "possession" is not defined in the Bankruptcy Code nor in the Uniform Commercial Code (O.R.C. Chapter 1309). Despite the dearth of case law on the issue, it is well settled that possession is not to be equated with ownership, particularly in light of the amendments to § 547(c)(5)(B) by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA").[1] *Logan v. Columbus Postal Employees Credit Union (In re Trott)*, 91 B.R. 808 (Bankr.S.D.Ohio 1988). The relevant point in time, according to the Trustee, is the actual date of delivery of the mobile home to the Debtors' property sometime between November 2 and November 6. The Defendant maintains that the relevant date is that on which the Debtors obtained unfettered access, absolute control and sole dominion over the mobile home. According to the Defendant, this occurred on November 9, 1987, the day that the Debtors paid the down payment to Remy and obtained the keys from Remy. As an aside, the Defendant also mentions that the final installation of the mobile home was delayed and that it was not habitable until sometime after November 9, 1987, due to delay in water hookup and the like. The Defendant briefly suggests that these factors also impact the date of "possession".

The Defendant's argument that acquisition of the keys gave the Debtors "possession" as that term is used in § 547(c)(3) is persuasive; however, the Court does not find it dispositive. Judge Waldron, in *Ledford. v. GMAC (Matter of Lorandos)*, 58 B.R. 519, 522 (Bankr.S.D.Ohio 1986) discussed the policies underlying the 1984 Amendments to § 547(c)(3):

> No legislative history can be found to explain the reasoning behind the change. It has been suggested that it was to comport with Uniform Commercial Code § 9–301(2) which gives a purchase money

secured creditor a ten (10) day grace period to file the financing statement, computed from the date the "debtor receives possession of the collateral," to gain priority over a lien creditor whose rights "arise between the time the security interest attaches and the time of filing." *See* Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 Vand.L.Rev. 713, 780 (1985) and Kaye, *Preferences Under the New Bankruptcy Code*, 54 Am.Bankr.L.J. 197, 205 (1980) (discussing pitfalls between the U.C.C. and the Bankruptcy Code as a result of the change from the Bankruptcy Act to the Bankruptcy Code in 1978). Another possible reason for the change is to ensure uniformity in the granting of exceptions to the preference statute ... [T]he time of attachment varies according to state law.

*See also*, 4 *Collier on Bankruptcy* ¶ 547.11 (15th 1988). This Court agrees with the analysis by Judge Waldron. Accordingly, case law interpreting the term "possession" in the UCC is relevant.

The most analogous case to the instant case is *Finance Co. of America v. Hans Mueller Corp. (Matter of Automated Bookbinding Services, Inc.)*, 471 F.2d 546 (4th Cir.1972). The Fourth Circuit noted in that case that the general purpose of the UCC is to create a precise guide for commercial transactions under which businessmen may predict with confidence the results of their dealings. *Automated Bookbinding*, 471 F.2d at 552. Similarly, § 547(c)(3) was amended to institute a "clear factual test for ascertaining when the 10–day perfection period commences." *In re Trott*, *supra* at p. 812.

In *Automated Bookbinding*, the court held that possession is demonstrated through "simple physical control." The facts of that case are illustrative. Automated executed a blanket security agreement with an after-acquired property clause for benefit of Finance Co. of America. Automated later purchased a bookbin-

---

1. Section 547(c)(3)(B) previously required perfection of the creditor's security interest "on or ‑ before 10 days *after such security interest attaches;...*. (Emphasis added.)"

der machine, which was delivered, in parts, on several dates between May 26, 1970 and June 2, 1970. Installation of the machine was not completed until sometime between June 13 and June 19. On June 15, the seller filed its financing statement to perfect its purchase money security interest, especially as against Finance Co. The court found possession complete on June 2, although Automated did not have use of the machine until between eleven and seventeen days later. Accordingly, because the seller failed to perfect its lien within 10 days of possession, the seller lost its favored position to the security interest of Finance Co.

This Court is somewhat troubled by the Fourth Circuit's distinction between possession and use enunciated in *Automated Bookbinding*. It would seem having possession of the property without having use of it could hardly create the interest intended by the drafters of the UCC and 11 U.S.C. § 547(c)(3). However, the unique nature of the collateral presents the possibility of a myriad of factual scenarios, which revives the problems in the application of § 547(c)(3) that BAFJA attempted to alleviate. For example, what if the Debtor chose not to connect the utilities until after the title was issued? Surely, under such circumstances it cannot be said that the Debtor still did not have possession even though he did not have use. Similarly, what if the Debtor chose not to equip skirting, connect utilities, etc., but used the mobile home for other purposes or moved it to another location? The BAFJA amendment to § 547(c)(3) was designed to provide a simplistic approach and a "clear factual test." Having wrestled with the issues of possession vis-a-vis use, the Court is compelled to follow *Automated Bookbinding*, and also must differentiate possession of the mobile home from functional use of the mobile home. The mobile home was placed on the Debtors' property before November 6, 1987. Thereafter, the Debtors had access to the mobile home, and could have obtained the keys at any time. As in *Automated Bookbinding*, the Debtors had simple physical control of the property, even though they did not have func-

tional use from the very moment of delivery. The Defendant perfected its lien on November 18, 1987: at least 12 days after the Defendants received the mobile home. Accordingly, the Defendant fails to meet the elements of the exception provided by § 547(c)(3).

■ Nor can the Defendant obtain any solace from the exception provided by § 547(c)(1). Section 547(c)(1) states that the Trustee may not avoid under § 547(b) a transfer—

(1) to the extent that such transfer was

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange; . . .

Although at first blush, it may seem that the Defendant could seek shelter under this provision, such is not the case. The majority of courts, including all of the Courts of Appeal which have considered the issue, have held that the contemporaneous exchange exception is not available to a purchase money secured creditor who has failed to meet the requirements of § 547(c)(3). *Union Bank and Trust Co. v. Baker (In re Tressler)*, 771 F.2d 791, 794 (3d Cir.1985); *Gower v. Ford Motor Credit Co. (In re Davis)*, 734 F.2d 604, 607 (11th Cir.1984); *Valley Bank v. Vance (In re Vance)*, 721 F.2d 259, 262 (9th Cir.1983); *In re Harley*, 41 B.R. 276, 281 (Bankr.N.D. Ga.1984); *In re Murray*, 27 B.R. 445 (Bankr.M.D.Tenn.1983); *In re Enlow*, 20 B.R. 480 (Bankr.S.D.Ind.1982); *Matter of Christian*, 8 B.R. 816 (Bankr.M.D.Fla. 1981); *In re Meritt*, 7 B.R. 876 (Bankr.W. D.Mo.1980). *See also*, 4 *Collier on Bankruptcy* ¶ 547.11 (15th ed. 1988).

Although not within the same factual context, the Sixth Circuit Court of Appeals has indicated its stance on this issue in *Ray v. Security Mutual Finance Corp. (In re Arnett)*, 731 F.2d 358. (6th Cir.1984):

[T]he practical effect of an expansive reading [of the contemporaneous exchange exception] in the "enabling loan"

context is to give creditors "two bites at the apple".... In light of the explicit grace periods provided for perfection of security interests in sections 547(e)(2) and 547(c)(3), Congress has clearly struck the balance in favor of repose in this area of the law. Case-by-case development of the contemporaneous exchange exception would quickly result in uncertainty and protracted litigation, delaying, not expediting, the satisfaction of creditors' claims and the debtor's return to financial health.

*Id.* at 362, 364. This Court is compelled to agree.

### B. *The Refund of Unearned Life Insurance Premium*

 The Trustee also asserts an interest in a potential refund of an unearned life insurance premium. At the time of execution of the security agreement, the Debtors purchased, through the Defendant, credit life insurance. A premium was paid of $1123.11. Although the security agreement purportedly gives the Defendant an interest in any unearned life insurance premium,[2] the Defendant failed to perfect or attempt perfection of its interest in the potential refund in any fashion.

Based on the foregoing, the Trustee asserts in Count III of his Complaint that any interest of the Defendant is avoidable pursuant to § 544(a) of the Bankruptcy Code. In Claims IV and V, he further seeks recovery of the unearned premium or its value pursuant to § 550, and/or turnover of any refund in the Defendant's possession pursuant to § 542.

The Defendant, of course, contests the Trustee's entitlement to any refund, but the Court is unable to discern exactly the theory or authority on which the Defendant relies. In any case, the Defendant admits that it did not undertake to perfect its security interest in this potential refund. Further, there can be no serious dispute that any refund is property of the estate pursuant to § 541(a) of the Bankruptcy

Code. *See, Scott v. Fifth Third Bank (In re Williams)*, 92 B.R. 761 (Bankr.S.D.Ohio 1988).

Due to lack of perfection of its security interest, the Trustee is entitled to avoid the interest of the Defendant. It should be noted, however, that the amount of any refund is not determined and there is no evidence that the Defendant has received any part of the potential refund. Accordingly, the Court cannot enter a monetary judgment, but will direct the Defendant to turn over any amount received which is attributable to the refund.

### Conclusion

Based on the foregoing, the Motion for Summary Judgment by the Trustee is granted and the Motion for Summary Judgment by the Defendant is denied. A separate judgment shall be entered in accordance with Bankruptcy Rule 7054.

IT IS SO ORDERED.

---

2. The Court has doubts that the security agreement has the requisite elements to establish any security interest in any potential refund, under O.R.C. Chapter 1309. However, the Court need not address this issue.