**In re Gary Alan ASHWORTH, Debtor.**

**William B. LOGAN, Jr., Trustee, Plaintiff,**

v.

**BANK OF AMERICA, FSB, Defendant.**

Bankruptcy No. 97–55260.
Adversary No. 97–0281.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Dec. 1, 1998.

Kenneth M. Richards, Columbus, OH, for plaintiff.

Ted P. McClatchey, Columbus, OH, for defendant.

### ORDER ON TRUSTEE'S COMPLAINT TO AVOID PREFERENTIAL TRANSFER

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

The matter is before the Court after the trial on the Complaint to Avoid Preferential Transfer filed by William B. Logan, Jr., the Chapter 7 Trustee of the within bankruptcy proceeding ("the Trustee"), against Bank of America, FSB. At the time of trial on this matter, the parties were afforded an opportunity to present argument and evidence in support of their respective positions.

This Court is vested with jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

### I. FINDINGS OF FACT

On May 6, 1997, Gary Ashworth ("Debtor") entered into a transaction to purchase a 1997 Dutch Housing, Inc. Model 1601 Manufactured Home ("the Home") from Best Homes, Inc. Debtor executed a Purchase Agreement with Best Homes, Inc. Debtor subsequently executed a retail installment contract and security agreement with BankAmerica Housing Services, a division of Bank of America, FSB ("the Bank"), to obtain financing for the purchase of the Home. On May 6, 1997, Debtor also executed an Application for Certificate of Title to a Motor Vehicle as part of the transaction, listing the Bank as lienholder. Sometime between May 6 and May 9, 1997, the Home was delivered to the designated location in Kenowa Village, a manufactured home community owned by the parent company of Best Homes, Inc. The Bank's Property Locator, admitted into evidence without objection, specified the location for delivery of the Home. On May 29, 1997, an Ohio Certificate of Title was issued for the Home, listing Debtor as owner, and the Bank as lienholder.

Debtor filed his request for relief under Chapter 7 of the Bankruptcy Code on June 9, 1997. It is undisputed that the certificate of title to the Home was issued subsequent to the execution of the retail installment contract and security agreement, and subsequent to Debtor obtaining possession of the Home. It is also undisputed that Debtor filed his bankruptcy petition within ninety (90) days of the issuance of the Ohio certificate of title for the Home, and that the notation of the Bank's lien on the Ohio certificate of title constitutes a "transfer" as defined by 11

U.S.C. § 101(54).[1]

The transaction for the sale of the Home was the responsibility of the General Manager of Best Homes, Inc., William Robbins, Jr. Mr. Robbins testified that he was personally responsible for the transaction entered by Debtor, including providing the Debtor with the keys and "loan packet" upon completion of all financing contingencies. Mr. Robbins testified that in accordance with its customary practice, Best Homes maintained control of the Home until it received payment from the Bank for the retail installment contract. Mr. Robbins testified that Best Homes routinely receives payment from the Bank after a loan is approved, an approval letter is sent from the Bank, and any conditions to closing the loan are satisfied by the buyer. The final step before the Bank makes payment to Best Homes is completion of a "telephone audit" whereby the Bank confirms that the manufactured home has been delivered to the appropriate site and that all contingencies have been satisfied.

Prior to Best Homes receiving payment from the Bank, the manufactured home remains subject to Best Homes' insurance coverage, and the buyer has no access to the home. Mr. Robbins testified that the buyer may be able to observe the home on its delivered site, and may be allowed to observe the home during its set-up, but the buyer does not obtain keys or access to the home until completion of the telephone audit, and until Best Homes receives payment from the Bank.

In this case, the Telephone/On–Site Verification Report, apparently prepared during the "telephone audit," is dated May 9, and was completed by Toni Agati, an employee of the Bank. The Telephone/On–Site Verification Report was admitted into evidence, without objection, however Toni Agati did not testify as a witness. Instead, the Bank called Michael Mockler, the region manager of the Bank, as a witness. Mr. Mockler, who has only been employed by the Bank since September 1, 1997 (subsequent to the dates relevant for this transaction), testified as to the Bank's general practices with respect to

manufactured home financing, and as custodian of the Bank's records.

Mr. Mockler testified as to the authenticity of the Telephone/On–Site Verification Report, which indicates that on May 9, 1997, Debtor was interviewed by telephone, and stated that the Home had been delivered to its destined site, but that he was not yet living in the Home. Mr. Mockler also testified that the Bank's records indicated that Debtor obtained insurance for the Home on May 9, 1997, and the Bank generated a Retailer Disbursement Listing showing that payments were disbursed by the Bank, including to Best Homes, Inc., on May 9, 1997. The Bank's Retailer Disbursement Listing was introduced as an exhibit at the time of trial, without objection from the Trustee.

The only issue to be decided by this Court is whether Debtor took "possession" of the Home within twenty days of the date of issuance of the Ohio certificate of title, thereby making this preferential transfer subject to the 11 U.S.C. § 547(c)(3) "enabling loan" defense.

## II. CONCLUSIONS OF LAW

The Trustee filed this action seeking to avoid the Bank's lien on the Home, alleging that noting the lien on the certificate of title constituted a preferential transfer, avoidable under 11 U.S.C. § 547(b). It is the Trustee's burden of proving the avoidability of the relevant transfer pursuant to 11 U.S.C. § 547(g). The burden is on the creditor or party in interest defending the avoidance action to prove, by a preponderance of the evidence, that the transfer is not avoidable based on one of the defenses in 11 U.S.C. § 547(c). 11 U.S.C. § 547(g); *Rieser v. Randolph County Bank (In re Masters)*, 137 B.R. 254, 261 (Bankr.S.D.Ohio 1992).

The parties in this case do not dispute the preferential nature of the notation of the Bank's lien on the certificate of title. The burden therefore shifts to the Bank to demonstrate that the transfer is subject to one of the defenses set forth in 11 U.S.C. § 547(c). Section 547(c)(3) is commonly referred to as

---

1. "Transfer" for purposes of this order will, unless otherwise noted, be defined as the notation of the Bank's lien on the certificate of title to the Home.

the "enabling loan" defense, and provides that a trustee may not avoid a preferential transfer:

(3) that creates a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected on or before 20 days after the debtor receives possession of such property . . .

■ In this case, the only aspect of the enabling loan defense challenged by the Trustee is the timing of perfection under 11 U.S.C. § 547(c)(3)(B). The Trustee asserts that the Bank's lien was noted on the certificate of title more than twenty days after Debtor received possession of the Home. The Bank argues that Debtor did not receive possession of the Home until on or after May 9, 1997, and since its lien was noted on the certificate of title on May 29, 1997, all aspects of the enabling loan defense have been satisfied. In summary, the specific issue to be decided by the Court, given the allegations and concessions made by the litigants, can be narrowed to whether the Debtor obtained "possession" of the Home before May 9, 1997. If the Debtor received possession of the Home on or after May 9, 1997, the Bank will have satisfied all elements of the enabling loan defense, and the Trustee will be unable to assert his avoidance power with respect to the transfer. Unfortunately, "possession" is not defined in the Bankruptcy Code.

Both parties refer to the definition of "possession", for purposes of 11 U.S.C. § 547(c)(3)(B), set forth in this Court's prior ruling in *Scott v. McArthur Savings & Loan Co. (In re Winnett)*, 102 B.R. 635 (Bankr. S.D.Ohio 1989). In *Winnett*, the debtors entered into a contract to purchase a mobile

home on or about October 3, 1987, applied for a loan from McArthur Savings & Loan to finance that purchase on October 24, 1987, and executed a note and security agreement for that loan on October 30, 1987. The mobile home was delivered to property owned and controlled by the debtors between November 2 and November 6, 1987. Between November 9 and November 16, 1987, the seller of the mobile home completed steps necessary for the set-up of the mobile home, and approximately two to three weeks after November 16, 1987, gas service was connected to the mobile home at the debtors' request. On November 9, 1987, the debtors paid the down payment for the mobile home, received the keys, and the seller of the mobile home received payment from McArthur Savings & Loan. McArthur Savings & Loan's lien was noted on the title to the mobile home on November 18, 1987, and the debtors filed for relief under Chapter 7 of the Bankruptcy Code on December 7, 1987.

In *Winnett*, this Court noted that the term "possession" was neither defined by the Bankruptcy Code nor the Uniform Commercial Code, as adopted by O.R.C. § 1309. *Winnett*, 102 B.R. at 637. That is still the case. In defining "possession," the court in *Finance Co. of America v. Hans Mueller Corp. (In re Automated Bookbinding Services, Inc.)*, 471 F.2d 546 (4th Cir.1972) noted that the general purpose of the Uniform Commercial Code is to create a precise guide for commercial transactions, and to allow for predictability of such transactions. *Automated Bookbinding*, 471 F.2d at 551–52. The court equated possession with "simple physical control", and found that "possession" occurred on the date of delivery of the parts to the relevant collateral, even though the collateral was not usable for another 11 to 17 days. *Automated Bookbinding*, 471 F.2d at 552. Defining possession as mere delivery, without corresponding use, was troubling to this Court in *Winnett*. "It would seem having possession of the property without having use of it could hardly create the interest intended by the drafters of the UCC and 11 U.S.C. § 547(c)(3)." *Winnett*, 102 B.R. at 637. However, noting that the legislative history to 11 U.S.C. § 547(c)(3) attempted to provide a "clear fac-

tual test", this Court found it necessary to differentiate possession from functional use, and found that the debtors in *Winnett* had simple physical control of the property at the time of delivery where the debtors had access to the mobile home, and could have obtained the keys at any time. *Winnett*, 102 B.R. at 637.

■ As inferred by the Court in *Winnett*, whether a debtor has "possession" for purposes of § 547(c)(3) involves a fact intensive inquiry. *Accord, Hendon v. General Motors Acceptance Corporation (In re B & B Utilities, Inc.)*, 208 B.R. 417, 425 (Bankr. E.D.Tenn.1997). Even the concept of "simple physical control" involves an analysis of the facts of the case, and possibly the type of collateral involved. In *B & B Utilities*, the debtor executed retail installment sales contracts for the purchase and financing of two 1995 Isuzu trucks from Olson Oldsmobile, Inc. Olson assigned the contracts to General Motors Acceptance Corporation, after which the trucks were sent by Olson to a third party to be customized. The trucks were returned to Olson on February 29, 1996, and delivered to B & B Utilities on that same date. The Court found that B & B Utilities did not have simple physical control over, or access to the trucks prior to February 29, 1996, and perfection of GMAC's security interests on March 1, 1996 was timely pursuant to § 547(c)(3)(B). *B & B Utilities, Inc.*, 208 B.R. at 425–26.

As set forth above, the Bank bears the burden of proof on the enabling loan defense, and the Trustee asserts that the Bank failed to meet its burden. From the evidence introduced at the time of trial, there is some uncertainty as to the exact date that the Home was delivered to the homesite, and the exact date that Debtor obtained access to the Home. The Trustee failed to introduce any evidence on this point. However, the evidence and supporting documentation introduced by the Bank was sufficient for the Court to conclude that Debtor did not obtain possession of the Home prior to May 9, 1997. This conclusion is supported by the Retailer Disbursement Listing showing that payment

was made on May 9, 1997 to Best Homes, Inc., Greentree Financial (Best Homes, Inc.'s floor-plan financer), TNS Insurance Agency and the Ross County Clerk of Courts. The application for mobile home owner's insurance shows that Debtor did not request coverage on the Home until May 9, 1997, and the Telephone/On–Site Verification Report shows that the Home was delivered to the designated site, but Debtor was not yet living in the Home on May 9, 1997.[2]

■ Unlike the debtor in *Winnett*, the Debtor in this case did not have access to the Home, and was not entitled to obtain keys to the Home immediately upon the delivery of the Home to its designated site. Here, the Home was delivered to property owned by the parent corporation of Best Homes, not property owned and controlled by the Debtor. Possession of a mobile home would require, at a minimum, that the Debtor had unfettered access to the mobile home. Even the ability to obtain keys would be persuasive evidence of "possession" under these circumstances. The evidence presented by the Bank sufficiently proves that the Debtor did not have access to, or simple physical control of the Home prior to Best Homes, Inc. receiving payment on May 9, 1997. The Trustee has failed to present any evidence, such as the testimony of the Debtor, or any other testimony or documentation, that conflicts with the evidence presented by the Bank. "Although the Defendant bears the burden of proof on the § 547(c)(3) defense, this does not mean that the Defendant must prove the absence of possession when there is no evidence in the record to the contrary." *B & B Utilities*, 208 B.R. at 425, n. 11. The evidence presented by the Bank, and the record in this adversary proceeding supports the conclusion that the Debtor did not obtain actual physical control over, or access the Home prior to May 9, 1997, and the perfection of the Bank's security interest in the Home on May 29, 1997 was therefore timely pursuant to 11 U.S.C. § 547(c)(3)(B).

Based on the foregoing, the Court hereby finds that the Trustee may not avoid the

---

**2.** These conclusions are consistent with the Affidavit of Toni Agati attached to the Bank's opposition to the Trustee's motion for summary judgment.

transfer at issue, and the notation of the Bank's lien on the certificate of title to the Home meets the requirements of the enabling loan defense set forth in 11 U.S.C. § 547(c)(3). Accordingly, judgment is hereby entered in favor of Bank of America, FSB, and the notation of the Bank's lien on the certificate of title to the Home is not subject to avoidance.

IT IS SO ORDERED.