**In re B & B UTILITIES, INC., Debtor.**

**William T. HENDON, Trustee, Plaintiff,**

v.

**GENERAL MOTORS ACCEPTANCE CORPORATION, Defendant.**

Bankruptcy No. 96–31623.
Adv. No. 96–3253.

United States Bankruptcy Court,
E.D. Tennessee.

April 29, 1997.

McCord, Troutman & Irwin, P.C., C. Mark Troutman, Knoxville, TN, for Plaintiff.

Baker, Donelson, Bearman & Caldwell, William Gregory Hall, Jr., Knoxville, TN, for Defendant.

### *MEMORANDUM ON CROSS–MOTIONS FOR SUMMARY JUDGMENT*

RICHARD STAIR, Jr., Bankruptcy Judge.

The Debtor, B & B Utilities, Inc., filed a Chapter 11 petition on April 30, 1996, which was converted to Chapter 7 on May 20, 1996.

The Trustee, William T. Hendon, commenced this adversary proceeding on November 12, 1996, with the filing of a Complaint seeking to avoid and recover two alleged preferential transfers pursuant to 11 U.S.C.A. §§ 547(b) and 550(a) (West 1993). On March 21, 1997, the Trustee filed a Plaintiff's Motion for Summary Judgment. On the same date, the Defendant, General Motors Acceptance Corporation, filed a Motion for Summary Judgment. The foregoing summary judgment motions are supported by documents and affidavits executed by William T. Hendon, Trustee, William E. Stack,[1] an employee of Olson Oldsmobile, Inc., and William R. Black, the president of the Debtor.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(F) (West 1993).

I

On January 22, 1996, the Debtor executed two documents, each entitled "Retail Installment Sale Contract," by which the Debtor purchased and financed two 1995 Isuzu Stake Trucks, VIN Nos. 4KLB4B1A8SJ002768 and JALB4B1K9S7010012, from Olson Oldsmobile, Inc. (Olson), in Livonia, Michigan.[2] Each contract granted Olson a security interest in the respective vehicle that it financed, and both contracts, by their own terms, were assigned to the Defendant on the date they were executed. After execution of the contracts, the vehicles were sent by Olson to be customized. The vehicles were later delivered to the possession of the Debtor on February 29, 1996. On January 30, 1996, a Change Endorsement was issued by Central Mutual Insurance Company, adding the two vehicles, effective January 22, 1996, to the automobile insurance policy maintained by the Debtor. An Application for Michigan Title was submitted to the Secretary of State in the state of Michigan, requesting that the

Defendant be listed as the first lienholder on the certificate of title.[3] The application was received by the Secretary of State on March 1, 1996. Pursuant to an August 30, 1996 Order, the Trustee sold one of the vehicles on condition that the interest of the Defendant, if any, would attach to the proceeds of the sale.

II

Pursuant to FED.R.CIV.P. 56(c), made applicable to this adversary proceeding through FED. R. BANKR.P. 7056, summary judgment is available only when a party is entitled to a judgment as a matter of law and when, after consideration of the evidence presented by the pleadings, affidavits, answers to interrogatories, and depositions in a light most favorable to the nonmoving party, there remain no genuine issues of material fact. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. The factual dispute must be genuine. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989).

III

■ The single issue to be resolved by the court, as set forth in the February 5, 1997 Pretrial Order, is "[w]hether the Defendant's interests in the estate's two 1995 Isuzu Troopers, or proceeds therefrom, are avoidable by the [T]rustee pursuant to 11 U.S.C. §§ 547(b) and 550." Bankruptcy Code § 547(b) provides in material part:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

---

1. Mr. Stack's affidavit is presented in two forms. A copy of the affidavit with supporting exhibits is appended to the Defendant's Memorandum of Law in Support of Motion for Summary Judgment filed March 21, 1997. The original affidavit, unaccompanied by the exhibits, was filed on April 4, 1997. Only the later affidavit will be considered by the court. As the facts underlying the cross-motions for summary judgment are essentially undisputed, the court will deem the exhibits appended to the unauthenticated affida-

vit filed March 21, 1997, as filed with the April 4, 1997 authenticated affidavit.

2. The Debtor's president, William R. Black, was a co-purchaser under both contracts.

3. The parties agree that questions of state law arising in this proceeding are governed by the laws of Michigan.

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; [ ]

. . . .

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C.A. § 547(b) (West 1993). The Defendant does not contest the foregoing elements of the Trustee's claim. However, because these elements have not been stipulated, the court deems it necessary to hold the Trustee to his burden of proof. *See* 11 U.S.C.A. § 547(g) (West 1993).

 As to the introductory requirement that there be a transfer of property of the debtor, the Bankruptcy Code broadly defines the term "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property." 11 U.S.C.A. § 101(54) (West 1993). It is settled law that the creation of a lien in favor of an unsecured creditor constitutes a transfer of property under § 547(b). *See Grant v. Kaufman (In re Hagen),* 922 F.2d 742, 745 (11th Cir.1991). The term "creditor," as used in § 547(b)(1), is defined in 11 U.S.C.A. § 101(10) (West 1993) to include any "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, se-

cured, or unsecured." 11 U.S.C.A. § 101(5) (West 1993). It is undisputed that the Defendant holds a prepetition right to payment against the Debtor.

 A debt is antecedent if it was incurred prior to the transfer of a debtor's property. *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.),* 88 F.3d 311, 316 (5th Cir.1996), *reh'g denied,* 95 F.3d 56 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 686, 136 L.Ed.2d 611 (1997); *Whittaker v. BancOhio National Bank (In re Lamons),* 121 B.R. 748, 750 (Bankr.S.D.Ohio 1990). In this proceeding, the record is clear that the Debtor incurred its debt to Olson on January 22, 1996.[4] To determine if this debt is antecedent to the transfers, the court must ascertain the date on which the transfers occurred. In making this determination, courts must look to 11 U.S.C.A. § 547(e)(2) (West 1993 & Supp.1997), which provides in material part:

For the purposes of this section ... a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time ...; [or]

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days[.]

State law governs the process by which a particular transfer is perfected and the time at which such perfection occurs. *Battery One–Stop v. Atari Corp. (In re Battery One–Stop Ltd.),* 36 F.3d 493, 495 (6th Cir.1994).

 The perfection of a security interest in a motor vehicle in Michigan is governed by MICH. COMP. LAWS ANN. § 257.238(a) (West 1996),[5] which provides in material part:

When an owner named in a certificate of title creates a security interest in the vehicle described in such certificate or in any accessory thereon:

(1) The owner shall immediately execute an application in the form prescribed by the department to name the

---

**4.** This obligation was assigned to the Defendant on the same date.

**5.** *See supra* note 3.

holder of the security interest on the certificate of title, showing the name and address of such holder and deliver the certificate of title, application and the required fee together with a copy of such application which need not be signed, to the holder of the security interest.

(2) The holder of the security interest shall cause the certificate of title, application and fee and the copy of such application to be mailed or delivered to the department.

(3) The department shall indicate on the copy of such application the date and place of filing of the application and return said copy to the person presenting the same.

(4) Upon receipt of the certificate of title, application and the required fee the department shall issue a new certificate in the form provided by section 222 setting forth the name and address of each holder of a security interest in the vehicle or in any accessory thereon for which a termination statement has not been filed and the date on which the application first stating such security interest was filed, and mail the certificate to the owner.

In Michigan, a security interest in a motor vehicle is perfected upon delivery to the Secretary of State of an application in conformity with the requirements of § 257.238. *Remes v. Ford Motor Credit Co. (In re Churchwell)*, 80 B.R. 855, 860 n. 7 (Bankr. W.D.Mich.1987); *see also Frank v. Second Nat'l Bank (In re Gilbert)*, 82 B.R. 456 (Bankr.E.D.Mich.1988). In this proceeding, the record is clear that the Secretary of State received the Application for Michigan Title for each vehicle on March 1, 1996. Accordingly, the court finds that the Defendant perfected its security interests on the same date. Therefore, under the authority of § 547(e)(2)(B), the transfer of the Defendant's liens occurred on March 1, 1996.

Since the Debtor incurred its debt to the Defendant on January 22, 1996, the March 1, 1996 transfer was clearly made "on account of an antecedent debt" under § 547(b)(2).

■ As to the question of whether the Debtor was insolvent at the time of the transfers, Bankruptcy Code § 547(f) provides:

For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

11 U.S.C.A. § 547(f) (West 1993). The transfers occurred on March 1, 1996, when the Secretary of State received the Application for Michigan Title for each vehicle. This date is clearly within the 90 days preceding the filing of the petition on April 30, 1996.[6] Given that the Defendant has not presented any evidence to rebut the presumption of insolvency, the court finds that the Debtor was insolvent at the time of the transfers. For these reasons, the elements set forth in subsections (b)(3) and (b)(4) are satisfied. Finally, in regard to § 547(b)(5), the Affidavit of William T. Hendon, Trustee, establishes the following: (1) excluding the Defendant, creditors have filed unsecured and priority claims in the amount of $875,-922.69; (2) the Trustee has sold one vehicle for $13,000.00; (3) the Defendant has filed a claim, in the amount of $28,591.41, upon the vehicle sold; and (4) the Trustee does not anticipate having sufficient assets to pay 100% to unsecured creditors. Because the distribution to unsecured creditors will be less than 100%, the § 547(b)(5) element is satisfied. *See Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 465 (6th Cir.1991) ("Unless the estate is sufficient to provide a 100% distribution, any unsecured creditor ... who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation."). Accordingly, the court finds that

---

**6.** Where a bankruptcy case is originally filed under Chapter 11 of the Bankruptcy Code and later converted to Chapter 7, the ninety day preference period under § 547 is measured from the date that the Chapter 11 petition was filed and not from the date of conversion. 11 U.S.C.A. § 348(a) (West 1993); *Vogel v. Russell Transfer, Inc.*, 852 F.2d 797, 798 (4th Cir.1988); *State of Ohio, Department of Taxation v. H.R.P. Auto Center, Inc. (In re H.R.P. Auto Center)*, 130 B.R. 247, 256–57 (Bankr.N.D.Ohio 1991).

the Trustee has met his burden of proof as to the elements set forth in § 547(b).

## IV

As already noted, the Defendant does not contest the § 547(b) elements of the Trustee's claim. Instead, the Defendant asserts an affirmative defense under 11 U.S.C.A. § 547(c)(3) (West 1993 & Supp. 1997), which provides:

The trustee may not avoid under this section a transfer—

(3) that creates a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected on or before 20 days after the debtor receives possession of such property[.]

The Defendant bears the burden of proving any § 547(c) defense by a preponderance of the evidence. 11 U.S.C.A. § 547(g); *Rieser v. Randolph County Bank (In re Masters)*, 137 B.R. 254, 261 (Bankr.S.D.Ohio 1992).

The record in this proceeding establishes that: (1) the Defendant's security interest secured new value to the Debtor in the form of two loans which enabled the Debtor to purchase the two vehicles; (2) the new value was given concurrent to the signing of the security agreement; (3) the security agreement contains a description of the property acquired by the Debtor that serves as collateral for the new value; (4) the new value was given by Olson, the Defendant's assignor; (5) the new value was given to enable the Debtor to acquire the two vehicles; and (6) the new value was in fact used by the Debtor to acquire the two vehicles. Therefore, the only

remaining issue is whether the Defendant perfected its security interest within twenty days from the time that the Debtor received possession of the vehicles.

It has already been established that the Defendant perfected its security interest, under Michigan law, on March 1, 1996. The Trustee contends that the Defendant cannot avail itself of the § 547(c)(3) defense because the Debtor received possession of the vehicles on January 22, 1996, upon consummation of the contract between the Debtor and Olson. (Pl.'s Resp. to Mot. for Summ. J. Filed by Def., General Motors Acceptance Corporation at 6.) The Defendant, on the other hand, argues that such perfection was timely because the Debtor did not receive possession of the two vehicles until February 29, 1996. In support of this position, the Defendant has proffered the Affidavit of William E. Stack.[7] By his affidavit, Mr. Stack establishes, among other things, that he is presently employed by Olson and that the general manager and sales manager who handled the sale of the two vehicles to the Debtor are no longer employed with Olson. In addition, in paragraphs 5 and 6 of the affidavit, Mr. Stack states that:

5. According to the files of Olson, the Trucks were returned to Olson by Truck Tech Engineers on February 29, 1996[,] after the Trucks had been customized. *See* Invoices of Tech attached hereto as Exhibits "C" and "D", respectively.

6. According to the files of Olson, the Trucks were delivered to the possession of B & B on or about February 29, 1996.

In conjunction with paragraph 5, two invoices of Truck–Tech, Engineers, Inc., each dated February 29, 1996, are attached to the affidavit as Exhibits C and D.

The Trustee has moved to strike paragraphs 5 and 6 and Exhibits C and D. (Pl.'s Resp. to Mot. for Summ. J. Filed by Def., General Motors Acceptance Corporation at 3 n. 1.) Specifically, the Trustee argues that paragraphs 5 and 6 cannot be considered in support of the Defendant's Motion for Summary Judgment because they are not based upon the personal knowledge

---

7. *See supra* note 1.

of Mr. Stack and constitute inadmissible hearsay. Indeed, FED.R.CIV.P. 56(e) provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

If an affidavit does not include sufficient factual information to establish the personal knowledge of the affiant, then a court cannot consider the affidavit in ruling on the summary judgment motion. *El Deeb v. University of Minnesota*, 60 F.3d 423, 428–29 (8th Cir.1995). Moreover, hearsay within an affidavit cannot be considered either. *Turoff v. May Co.*, 531 F.2d 1357, 1362 (6th Cir.1976). In the case of Mr. Stack's affidavit, it provides insufficient information to establish that paragraphs 5 and 6 are based upon his personal knowledge. Although it establishes that Mr. Stack presently works for Olson, it does not indicate whether he worked for Olson at the time of the events set forth in paragraphs 5 and 6. Even if he did work for Olson at that time, the affidavit establishes only that the former general manager and sales manager had personal knowledge of these events and not Mr. Stack. Paragraphs 5 and 6 are not based upon the personal knowledge of the affiant but instead are based upon "the files of Olson" and constitute inadmissible hearsay under the authority of FED.R.EVID. 802. Additionally, Exhibits C and D (two separate invoices of Truck–Tech Engineers, Inc.), although potentially admissible under the business records hearsay exception of FED.R.EVID. 803(6), also constitute inadmissible hearsay because a proper foundation has not been laid for their introduction under the exception. Accordingly, the court will not consider paragraphs 5 and 6 of Mr.

Stack's affidavit nor Exhibits C and D attached thereto.[8]

Notwithstanding the inadmissibility of certain evidence submitted by the Defendant in support of its motion for summary judgment, the Defendant has proffered other evidence to support its position that the Debtor did not receive possession of the vehicles until February 29, 1996. An affidavit executed by William R. Black, the president of the Debtor at all times relevant to this proceeding, establishes that: (1) after he executed the contracts for the purchase of the vehicles, they were sent by Olson to be customized; and (2) the two vehicles were not delivered to the possession of the Debtor until February 29, 1996. The Trustee has submitted no counter affidavits or other evidence to dispute these facts.

■ To determine whether the Defendant is entitled to summary judgment, it is necessary to understand the meaning of the term "possession" as it is employed in § 547(c)(3)(B). Courts that have examined this issue have interpreted the term to mean "physical control or custody of the collateral, as opposed to the acquisition of a right of ownership." *Logan v. Columbus Postal Employees Credit Union, Inc. (In re Trott)*, 91 B.R. 808, 811 (Bankr.S.D.Ohio 1988); *see also Scott v. McArthur Sav. & Loan Co. (In re Winnett)*, 102 B.R. 635, 637 (Bankr. S.D.Ohio 1989) ("possession is not to be equated with ownership"). Therefore, resolution of the issue before the court depends upon whether the Debtor acquired physical control or custody over the vehicles prior to February 10, 1996. *See Lamons*, 121 B.R. at 751–52 (concluding that FED. R. BANKR.P. 9006(a) determines the time period within which a creditor must perfect its purchase money security interest under § 547(c)(3)(B)).[9]

---

**8.** The Trustee also moved to strike paragraph 2 of the affidavit which provides:

> 2. According to the files of Olson, B & B Utilities, Inc. ("B & B") and William R. Black executed contracts for the purchase of two (2) vehicles from Olson on January 22, 1996. One vehicle is a 1995 Isuzu Stake Truck, VIN 4KLB[4B]1A8SJ002768 and the other is a 1995 Isuzu [S]take [T]ruck, VIN JALB4B1K9[S]7010012 ("Trucks"). *See* Retail

Installment Sale Contracts attached hereto as Exhibits "A" and "B", respectively.

The court agrees with the Trustee that paragraph 2 is inadmissible evidence based upon hearsay and lack of personal knowledge on the part of the affiant. However, such an evidentiary ruling is immaterial since the Trustee himself has entered copies of the contracts into the record.

**9.** FED. R. BANKR.P. 9006(a) provides in material part:

Because the determination of whether a debtor received possession of the collateral on a certain date is a fact-specific inquiry, the court deems it beneficial to consider the facts of other cases that have addressed the issue. In *Trott*, the debtor executed a contract for the purchase of an automobile on March 11, 1987. To finance the purchase, the debtor obtained a loan from a credit union. The loan was secured by a purchase money security interest in the automobile. On March 13, 1987, the automobile was delivered to the debtor. On March 19, 1987, a certificate of title to the automobile was issued to the debtor and delivered to the credit union. On March 24, 1987, the credit union had its lien noted on the certificate of title. The debtor filed a bankruptcy petition on April 2, 1987. The trustee commenced a preference action under § 547(b). The sole issue before the court was whether, under § 547(c)(3)(B), the debtor "possessed" the vehicle more than ten days prior to the perfection of the credit union's security interest on March 24, 1987.[10] The credit union argued that possession did not occur until March 19, 1987, the date on which the certificate of title was issued to the debtor. The trustee argued that the debtor received possession of the automobile on March 13, 1987, the date it was delivered to the debtor by the automobile dealership. The court rejected the credit union's argument and entered a judgment in favor of the trustee. *Trott*, 91 B.R. at 813.

In *Winnett*, the debtors executed a contract for the purchase of a mobile home on October 3, 1987. On October 30, 1987, the debtors acquired a loan to finance the purchase price. The creditor secured the loan with a purchase money security interest in the mobile home. The mobile home was delivered to the debtors' real property be-

tween November 2 and November 6, 1987. Prior to November 9, 1987, the seller returned to the debtors' real property to, among other things, level the mobile home, remove the tires, set the mobile home on blocks, and install the steps. At that time, the debtors made the down payment and received the keys and the title to the mobile home. Thereafter, the creditor who made the loan to the debtors noted its lien on the certificate of title to the mobile home on November 18, 1987. The debtors filed a bankruptcy petition on December 7, 1987. The trustee commenced a preference action under § 547(b). The sole issue before the court was whether, under § 547(c)(3)(B), the debtor "possessed" the vehicle more than ten days prior to the perfection of the credit union's security interest on November 18, 1987. The secured creditor argued that the debtors did not receive possession of the mobile home until November 9, 1987, the date on which the debtors obtained the keys to the same. The trustee, on the other hand, argued that the debtors received possession of the mobile home between November 2 and November 6, 1987, when the mobile home was delivered to their real property. The court agreed with the trustee, holding that the debtors received possession of the mobile home on the date it was delivered to their real property. *Winnett*, 102 B.R. at 638. In reaching this conclusion, the court noted that the debtors received possession once they had physical control over, and access to, the mobile home. *Id.*

In this proceeding, there is no evidence in the record that the Debtor had physical control over, or access to, the vehicles prior to February 29, 1996.[11] In fact, the record is void of any details as to the location of the vehicles or any of the Debtor's

---

In computing any period of time prescribed or allowed ... by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday[.]

**10.** Prior to the Bankruptcy Reform Act of 1994, § 547(c)(3)(B) provided a creditor with only ten days to perfect its purchase money security interest.

**11.** The Trustee contends that the issue should be framed as whether there is any proof in the record to establish "that the [D]ebtor did not take possession of the trucks prior to February 29, 1996." (Pl.'s Resp. to Mot. for Summ. J. Filed by Del., General Motors Acceptance Corporation at 5.) The court disagrees. Although the Defendant bears the burden of proof on the § 547(c)(3) defense, this does not mean that the Defendant must prove the absence of possession when there is no evidence in the record to the contrary. The issue is whether the Defendant perfected its security interest within twenty days from the date that the Debtor received possession

agents prior to February 29, 1996.[12] In the absence of such evidence, the court cannot conclude that the Debtor had physical control over, or access to, the vehicles prior to such date. The court cannot assume that an agent of the Debtor was at the same location as the vehicles at the time that the installment sales contracts were signed, or any time thereafter. The record supports a finding only that a contract for the purchase and financing of each vehicle was executed on January 22, 1996, and that the vehicles were delivered to the possession of the Debtor on February 29, 1996.[13] Given that there is no evidence of actual physical control over, or access to, the vehicles by the Debtor until February 29, 1996, the court concludes that the perfection of the Defendant's security interests on March 1, 1996, was timely under the authority of § 547(c)(3)(B).[14] As such, the Trustee cannot prevail under § 547(b). *See Luper v. Columbia Gas (In re Carled, Inc.)*, 91 F.3d 811, 813 (6th Cir.1996) (noting that a trustee may avoid transfers that fall within the provisions of § 547(b) unless one of the exceptions under § 547(c) applies).

**V**

For the reasons set forth in this memorandum, the Trustee's summary judgment motion will be denied and the Defendant's summary judgment motion will be granted. The Trustee's Complaint will be dismissed. An appropriate judgment will be entered.

---

of the vehicles. The Defendant has satisfied this burden. Given that there is no dispute as to these facts, Fed.R.Civ.P. 56 places the burden on the Trustee, as the nonmoving party, to come forward with some evidence to create a genuine issue of material fact. *Liberty Lobby*, 477 U.S. at 255–57, 106 S.Ct. at 2514; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " (quoting Fed.R.Civ.P. 56(e)). In the absence of such, the Trustee assumes the risk of an adverse judgment as a matter of law.

12. The court knows that the vehicles were "sent" somewhere to be customized prior to February 29, 1996. However, the record does not establish the location where the vehicles were sent. Furthermore, it could be argued that the fact that the vehicles were "sent by Olson" implies that the vehicles were at Olson's place of business at some time prior to February 10, 1996. Although this is a viable possibility, it is pure speculation. It is also possible that Olson ordered a third party, such as the manufacturer, to send the vehicles to the location where they would be customized. Finally, even if the court could safely assume that the vehicles were at Olson's place of business prior to February 10, 1996, there is nothing in the record to establish that an agent of

the Debtor was at the same location so as to create a situation whereby the Debtor exercised physical control over the vehicles.

13. This information does not establish the location of the vehicles or agents of the Debtor. Nevertheless, this fact clearly establishes the date the Debtor acquired physical control over the vehicles.

14. The Trustee also argues that under Michigan law a bailment relationship was created whereby one party delivers personal property to another in trust for a specific purpose. (Pl.'s Resp. to Mot. for Summ. J. Filed by Del., General Motors Acceptance Corporation at 6.) The court does not agree that bailment law bears upon the issue of possession. Either the Debtor did or did not receive possession of the vehicles prior to February 29, 1996. Whether the vehicles were delivered in trust for a specific purpose does not bear upon the issue of physical control. In essence, what the Trustee really argues is that legal ownership, and the authority to create a bailment, is tantamount to possession or physical control. Yet, as previously noted, legal ownership does not constitute possession or physical control. This is clear from the facts of Trott and Winnett. In neither case did the consummation of the sale contract give rise to possession. Instead, possession was based upon proof of physical delivery. In this proceeding, the earliest proof of such delivery is February 29, 1996.